(No. 13284.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MILTON D. SORRELLS, Plaintiff in Error.

*Opinion filed June 16, 1920.*

1. CRIMINAL LAW—*what is not evidence of motive.* On a trial for wife murder, evidence that the deceased had received compensation for an injury and that the money was placed in a bank in the names of both the husband and the wife and that he had drawn out portions of it is not sufficient to show motive for the commission of the crime.

2. SAME—*proof must be of conclusive nature to warrant a conviction on circumstantial evidence.* To warrant a conviction on circumstantial evidence the proof must be of a conclusive nature and must exclude every other reasonable hypothesis than that the accused, and no one else, committed the crime.

3. SAME—*what question asked of defendant on cross-examination is reversible error.* In a murder trial, where there is no evidence that the defendant was at the place where the crime was committed at the time the circumstances show it must have been perpetrated, it is reversible error for the attorney for the prosecution to ask the defendant, on cross-examination, if he remembered a certain witness testifying at the coroner's inquest that she saw the defendant going to the place of the crime, where said witness is dead and there was no attempt to use her testimony at the inquest.

4. SAME—*duties of attorney for prosecution do not authorize him to prejudice rights of defendant.* There is nothing in the duties of an attorney for the prosecution which requires him to prejudice the right of a defendant to a fair trial in an eagerness to secure a conviction.

5. SAME—*threat to kill another person is not admissible in murder trial to show malice toward the deceased.* Evidence of a threat by the accused in a murder trial to kill or injure a person other than the deceased, or a mere charge of a general nature not directed to any particular person, is not admissible to show malice toward the deceased.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HENRY GUERIN, Judge, presiding.

PEARL M. HART, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and JOHN PRYSTALSKI, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county on an indictment charging him with the murder of Margaret Sorrells, his wife, on the 7th day of August, 1918, by striking her on the head with a hammer. He was sentenced on the verdict of the jury to the penitentiary for the term of his natural life. He contends that the conduct of the State's attorney was prejudicial and constitutes reversible error, that the court erred in ruling on the admissibility of certain testimony, and that the verdict of the jury was not supported by the evidence.

There were no eye-witnesses to the murder of Margaret Sorrells. The uncontroverted testimony discloses that the plaintiff in error and the deceased had lived for some months on South Dearborn street, in the city of Chicago. The wife's parents lived with them. On August 7, 1918, plaintiff in error and his father-in-law, William Green, and his mother-in-law, wife of Green, all left the home of plaintiff in error early in the morning. Green and his wife were employed, and plaintiff in error stated that he was going to the stock yards to look for employment. He returned home about 1:30 o'clock, bringing with him a chicken and some rolls, and going into the house found his wife lying on the bed, with a sheet covering her from her ankles to her breast. She had been dead for several hours, as the body was cold. Clothing had been pulled out of the closets and drawers and the room was in disorder. Plaintiff in error called up the police and notified them. The evidence at the coroner's inquest established that the deceased came to her death by shock and hemorrhage of the brain caused by blows upon the head from a blunt instrument. The

indictment charges that the wounds were made with a ham-. mer, and it was sought to prove that the injury was caused by a hammer owned by the plaintiff in error and found in his kitchen. The trial court ruled, however, that the proof was not sufficient to establish that the injuries were caused by the hammer in question and it was ruled inadmissible.

The evidence tends to show that the plaintiff in error and his wife had always lived peaceably and happily together. Rachel Green, the mother-in-law of the plaintiff in error, testified that he and his wife quarreled at different times, but the evidence in the record tends to establish that whatever difficulty there was between him and the members of his immediate family occurred between him and Rachel Green. There appears to be no evidence in the record of a motive for the alleged crime on the part of the plaintiff in error. The evidence discloses that the deceased had received as compensation for an injury a sum of money, approximately $175, which was put in the bank in the names of both the plaintiff in error and the deceased, and that the plaintiff in error had drawn out portions of it, and this is urged by the State as showing a cause of difficulty between him and the deceased and afforded motive for the crime. We are not impressed with this argument as affording motive for the crime. Had the money been in the bank and plaintiff in error shown to have desired to secure it, it might be argued that such a condition would be evidence of motive. It could hardly be said, however, that having secured the money without his wife's consent, which plaintiff in error denies, such would constitute motive for the crime of murder.

Plaintiff in error gave a detailed statement of his whereabouts on the morning of the day of the crime, portions of which are corroborated by witnesses, to the effect that he spent the morning at the stock yards in search of employment. The only testimony that he was seen in the neighborhood of his home that morning after leaving was that given

by the witnesses English and Williams, who testified that the plaintiff in error was in a saloon at Fifty-second and State streets, where the witnesses were employed, about nine o'clock. Of these witnesses, Williams testified that plaintiff in error wanted him to take some things over to his house, which he declined to do. The testimony of the latter witness appears to be of little probative value, as the record discloses that he testified before the coroner that the time at which he saw the plaintiff in error in the saloon in question was along about eleven o'clock, the evidence also disclosing that the grade of his intelligence is not high. The testimony of Herbert Dickerson, a witness for the People, was to the effect that the sister of the plaintiff in error sent him over to the house of plaintiff in error about half-past nine o'clock in the morning and that plaintiff in error was not there at that time. This witness testifies that he was around Fifty-first and Dearborn streets practically all that morning but saw nothing of plaintiff in error there.

The whole of the State's case, so far as the guilt of the plaintiff in error is concerned, is based upon circumstantial evidence. In order to warrant a conviction of crime on circumstantial evidence the proof of the circumstances must be of a conclusive nature and tendency, leading, on the whole, to a satisfactory conclusion, and producing a reasonable and moral certainty that the accused, and no one else, committed the crime. The guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis. (*People* v. *Rischo,* 262 Ill. 596.) In this case there was no direct evidence to show that the plaintiff in error had been in his house between the time he left early in the morning, leaving Rachel Green and her husband in the company of his wife, and the time of his return about 1 :30 o'clock that day. The fact that the evidence of the guilt of the plaintiff in error was by no means of a conclusive character required that the record be kept free from prejudicial error. Plaintiff in error contends that the State's

attorney committed prejudicial error in asking certain questions of plaintiff in error on cross-examination, as follows:

Q. "You remember a woman named Rose Mason testifying at the inquest?

A. "Sure.

Q. "Rose is dead now, isn't she?

A. "Yes, sir.

Q. "You remember her saying she saw you going in that house that morning?"

This last question was objected to and the objection sustained, but the question was clearly prejudicial error. There was no attempt to use the testimony of Rose Mason before the coroner's inquest, but the inference was gotten before the jury that there had been a witness, now dead, who had seen the plaintiff in error go into his house, where the deceased was later found dead, during the morning of the day of the crime. There was no evidence in the record tending to show that he was in his house during that morning after first leaving it. While the court sustained the objection the damage from such question had been done. This question supplied by inference in the minds of the jury a link in the chain of circumstances not supplied by any portion of the evidence. This was reversible error. The State's attorney had no right to ask this question. While errors are sometimes committed by counsel through eagerness to win a lawsuit, yet there is nothing in the duty of attorneys for the State which requires them to prejudice the right of a defendant to a fair trial in an eagerness to secure a conviction. The question in this case is peculiarly prejudicial in view of the fact that there was no evidence in the record tending to show that he had entered the house during the morning in question, and the impression left on the minds of the jury could not have been other than that there had been a witness, now dead, who could supply the missing link in the chain of circumstances against the defendant. A defendant charged with a crime has the right to be con-

fronted by those who testify against him. This is not only a fundamental rule of law but is likewise guaranteed by section 9 of the bill of rights. For this error the judgment must be reversed and the cause remanded.

Plaintiff in error also contends that the court improperly overruled his motion to strike evidence of a certain alleged threat. Florence Edwards, a witness for the State, testified that a short time before the crime in question she had talked with the plaintiff in error; that he told her that his mother-in-law had his and his wife's bank book; that if she didn't give it up he didn't know what would happen; that when he left the home of the witness he said, "You needn't be noway surprised at nothing you hear." Counsel for plaintiff in error objected to the statement and moved that it be stricken on the ground that there was nothing in the statement to indicate a threat against the deceased; that if it was a threat against anybody it was against the mother-in-law of the plaintiff in error. It is a rule well settled in this State that a threat by the accused to kill or injure a person other than the deceased, or a mere charge of a general nature not directed to any particular person, is not admissible to show malice toward the deceased. (*People* v. *Scott*, 284 Ill. 465.) The statement attributed to plaintiff in error was not a threat against his wife. If it was a threat against anyone it was a threat against his wife's mother and was not admissible to show malice toward the deceased. We are of the opinion that the trial court should have stricken this testimony on motion.

The judgment of the criminal court of Cook county will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*