THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NORMA WATKINS, Defendant-Appellant.

(No. 60813; ▮▮▮▮▮▮▮)

First District(2nd Division)—November 18, 1975.

*Rehearing denied December 17, 1975.*

Val R. Klink, of Chicago (William D. Klink, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and William J. Stacy, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Norma Watkins, defendant, was found guilty by a jury of the crime of murder (Ill. Rev. Stat. 1969, ch. 38, par. 9—1) and was sentenced to not less than 20 nor more than 40 years.

On appeal, defendant contends that the trial court erred in permitting in evidence a statement by defendant to the effect that she would burn down decedent's home and testimony of a fire there the same evening; that the State's nondisclosure of certain evidence prior to trial was prejudicial to defendant and reversible error; and that the sentence was excessive.

As defendant does not challenge the sufficiency of the evidence, only such of the facts as are necessary to resolve the issues presented will be set forth. The undisputed facts follow. Clarence Young was beaten in his backyard in the City of Chicago on the evening of December 12, 1970, at about 8 p.m. Young died three days later as a result of the injuries received that evening. Defendant was Young's sister-in-law, and she was at his home with her mother on the evening of the beating. Upon indictment the public defender was appointed to represent defendant. A motion for discovery was immediately filed by defendant. The discovery motion requested, among other things, a list of witnesses

to any oral statement that defendant may have made and the production and copy of any statement, oral or written, made by any witnesses for the State.

The State introduced three witnesses that testified they had seen a woman beating a man in Young's backyard on the evening of December 12, 1970. Two of the witnesses positively identified defendant as the person beating the deceased with a stick or pipe. All three witnesses described the victim as wearing nothing but a white shirt, and two of these witnesses noted the woman doing the beating wore dark pants and a light shirt. Another witness testified she saw defendant in Young's backyard on the night in question, but she did not see the defendant beating the deceased.

Young's neighbor, Albert Heard, testified he was called by someone on the night in question, went out on his back porch and saw Young on the ground unable to get up. The witness went inside, called the police, dressed, and went over to Young's home. By the time the witness arrived at the home, Young was in the kitchen by the back door. Defendant and her mother were also in the kitchen. Heard recalled defendant was wearing dark pants and a light shirt, and on rebuttal he recalled she was carrying a glass with an alcoholic-looking substance and liquor on her breath. An investigating officer testified he found blood in the living room, throughout the basement, and on the stairs leading into and out of the basement of Young's house on the night in question, as well as in the kitchen. This officer also testified he detected an odor of alcohol about defendant.

In addition to testifying to the events of the night in question, Heard also testified regarding a conversation he overheard about a week prior to the evening of the beating. Before the testimony was received, defendant, outside the hearing of the jury, objected to Heard's testimony as a violation of both the hearsay and discovery rules. Thereafter defense counsel was allowed to interrogate the witness out of the presence of the jury with respect to the alleged statements made by the defendant. The trial court then allowed the statement—"I will burn the son-of-a-bitch down"—allegedly made by the defendant, to be introduced before the jury to show defendant's motive or intent for committing the alleged offense. The court further allowed the witness to testify as to an alleged fire at Young's home on the evening the alleged threat was made. No other evidence of a fire was introduced, whereupon defense moved for a mistrial which the court denied. Defendant's post-trial motion for a new trial sought to prove there was in fact no fire at Young's home as alleged by Heard.

Defendant testified that she was at Young's home on the night of the

beating. She denied seeing or speaking with Young earlier that evening, denied she had been drinking, and stated she did not beat Young over the head and that she did not kill him. She stated she and her mother went to the house looking for her sister. She testified she and her mother arrived at the house, found no one home, and proceeded to make dinner. She claimed she did not see Young that evening until she was taking out the garbage after dinner. At this time she testified that she saw Young lying on the ground in the backyard, saw he was beaten and let out a scream. She alleged he was asking her to get his pants, but that she stayed there and helped him into the house. She believed it was her scream which alarmed the neighbors to call the police.

In rebuttal the State introduced evidence that defendant told an investigating officer that she had spoken with Young earlier in the evening on the night of the alleged beating. The State also introduced evidence the defendant had called the neighbors earlier that day asking them to check and see if her sister was at home, and the neighbors allegedly reported no one was at home. The State also introduced testimony of Officer McCluskey who investigated a missing person report on defendant's sister which was filed by defendant on December 11, 1970. The officer testified the defendant talked with him on December 13, 1970, and made no mention about the events of the twelfth, but stated her brother-in-law was in the hospital as a result of injuries sustained in a robbery.

In its closing argument the State once again referred to the alleged threat made by defendant and the resulting fire. The jury returned a guilty verdict. Defendant's motion for a new trial was denied and after a hearing in aggravation and mitigation, including a presentence report, the court sentenced defendant to not less than 20 nor more than 40 years.

## I.

At the outset it should be noted that defendant failed to file in this court any excerpts or abstract of the record as required by Supreme Court Rule 342. (Ill. Rev. Stat. 1973, ch. 110A, par. 342.) Though this court could affirm for the failure to file the abstract or excerpts (see *Denenberg v. Prudence Mutual Casualty Co.* (1st Dist. 1970), 120 Ill.App.2d 68, 70, 256 N.E.2d 71), the fault here is the disregard of the rules of this court by the attorney for the defendant. As we have said in *People v. Edgeworth* (1st Dist. 1975), 30 Ill.App.3d 289, 303-04, 332 N.E.2d 716, an omission of an attorney in the prosecution of an appeal is conduct which will be directed to the attention of the Attorney Registration and Disciplinary Commission for such action as they deem appropriate. Certainly the party who is relying on an attorney has the

right to expect the attorney to comply with the rules of court so as to protect all the rights of a client.

## II.

Defendant objects to the introduction of evidence of prior statements allegedly made by defendant as a violation of Supreme Court Rule 412(a)(ii). (Ill. Rev. Stat. 1971, ch. 110A, par. 412(a)(ii).) Rule 412(a)(ii) requires the State, upon written notice, to disclose "any written or recorded statements and the substance of any oral statements made by the accused * * * and a list of witnesses to the making and acknowledgment of such statements."

■■ Contrary to the State's position that it had no duty to disclose a statement unless witnessed by a law enforcement officer, in our opinion, Rule 412(a)(ii) requires the State to disclose any and all statements known to it which have been made by a defendant. It is obvious that the availability of all such statements will materially aid counsel for the defendant in the preparation and trial of the case. We find nothing in the text of the rule or in the committee's comments to suggest the rule is limited to statements made by an accused to an officer as suggested by the State. (See *People v. Manley* (2nd Dist. 1974), 19 Ill.App.3d 365, 370, 311 N.E.2d 593.) However, the failure to disclose in this case did not offend the purpose of the discovery rules to prevent surprise or unfair advantage and to aid in the search for truth. In the case at bar, defense counsel admitted in argument to the trial court that the State had only then learned of the alleged threat made by defendant. A reading of the record indicates defense counsel had knowledge of the nature of the statement to be testified to by Heard regardless of whether it had been disclosed. Furthermore, the trial court allowed counsel to question the witness outside the presence of the jury regarding this statement before Heard testified about the statement. Defendant's counsel, after interviewing Heard, made no motion to the trial court for a continuance to investigate the matter further.

It thus appears that defense counsel was provided an opportunity to talk with Heard—before he testified—and in the absence of any statement in the record to the contrary, we must conclude defense counsel was satisfied to proceed with the trial without requesting additional time to investigate Heard's statement. Under these circumstances we do not find any prejudice to the defendant notwithstanding the failure of the State to comply with Rule 412(a)(ii).

## III.

The defendant next contends the State did not lay a proper founda-

tion for the introduction of the alleged threat by the defendant against the deceased. Defendant concedes that threats against a victim are admissible to show malice and criminal intent (*People v. Lion* (1957), 10 Ill.2d 208, 217, 139 N.E.2d 757), but those threats must in some way be linked to the victim. *People v. Scott* (1918), 284 Ill. 465, 474, 120 N.E. 553; *People v. Sorrells* (1920), 293 Ill. 591, 596, 127 N.E. 651.

In the case at bar, the State failed to link the alleged threat made by defendant to the deceased. Heard, a neighbor of the deceased, testified he heard the defendant make a threat to burn something down. At the time the threat was made there were several persons on Young's back porch. Heard did not know to which if any of those persons the alleged threat was directed. Thus there was no link established between the threat made and the victim Young.

■■ So far as this record is concerned, the statement by the defendant was so general and so impersonal that it cannot be characterized as being directed to anyone, let alone the deceased. Therefore, in our opinion, because of the lack of a proper foundation, the statement was not admissible to show malice by the defendant towards the deceased.

■■ After determining that this statement was erroneously admitted we must next determine if this error was so prejudicial as to require reversal. If there is competent evidence, independent of the erroneously admitted evidence, which establishes beyond all reasonable doubt the guilt of the defendant, as here, the verdict must be affirmed. (*People v. Jordan* (1st Dist. 1974), 18 Ill.App.3d 133, 136, 309 N.E.2d 274; *People v. Colon* (1st Dist. 1974), 20 Ill.App.3d 858, 862-63, 314 N.E.2d 664; 15 Ill. L. & Pr. *Criminal Law* § 932 (1968); *cf. People v. Gill* (1973), 54 Ill.2d 357, 367, 297 N.E.2d 135, *cert. denied*, 414 U.S. 1144, 39 L.Ed.2d 100, 94 S.Ct. 897.) In *People v. Perez* (1975), 36 N.Y.2d 848, 331 N.E.2d 691, 691-92, it was held that a nonconstitutional error is reversible only if, "\* \* \* upon the People's evidence viewed by the fact finders as credible, there is a significant probability that the jury would have acquitted the defendant had it not been for the error which occurred."

■■ Here two eyewitnesses testified defendant was the person who beat Young on the night in question; two other witnesses placed her at the scene of the crime, which she herself did not deny; and the jury had the opportunity to hear defendant give her own version of the events which took place that evening. Under these circumstances the evidence of the alleged threat made several days prior to the beating, in our opinion, was not so prejudicial as to dilute the overwhelming evidence supporting the jury's verdict of guilt. In fact even the defendant did not challenge in this appeal the sufficiency of the evidence.

## IV.

Since we have ruled admission of the alleged threat was improper, it was also improper to admit evidence tending to indicate defendant carried out that threat by causing a fire in Young's home. Heard, the only witness to testify to the alleged fire, claimed the fire was great enough to require the summoning of the fire department. At the trial this evidence was not contradicted.

At the post-trial hearing for a new trial approximately one and one-half months after the jury verdict, defense counsel stated he had requested the custodian of records of the Chicago Fire Department to appear in court on that morning—and had issued a subpoena which had not yet been returned—and made an offer of proof that the records would show that during the months of November and December 1970 there was no report of fire at the address where Heard said there was a fire to which the fire department responded. Defendant's allegation was thus not supported by an affidavit or proof of any sort. On objection of the State the trial court denied the offer of proof.

■■ The allowance of an application for a new trial on the ground of newly discovered evidence is largely discretionary with the trial court and will not be disturbed on review in the absence of a showing of an abuse of discretion. (*People v. Baker* (1959), 16 Ill.2d 364, 373, 158 N.E.2d 1; *People v. Reese* (1973), 54 Ill.2d 51, 59, 294 N.E.2d 288.) Here the post-trial oral statement of defense counsel was not supported by any corroborative evidence, and referred to a matter which could have been discovered prior to trial by the exercise of due diligence, or at least in the one and one-half months following the trial, if in fact it was available. It should be noted that witness Heard was listed on the list of witnesses furnished to the defendant before trial. Again we observe that if the information referred to had been obtained, if admissible it could have impeached the testimony of Heard. However, the evidence as to the beating of the deceased by the defendant was from witnesses other than Heard. Therefore the new evidence was not of such a conclusive character that would probably change the result of the trial. We believe the action of the trial court in denying the offer of proof was not an abuse of discretion.

## V.

The final issue raised by the defendant is that the sentence imposed by the court was excessive. Prior to sentencing the court considered a presentence report concerning the defendant which consisted of a personal history including social conditions surrounding the defendant's life.

A hearing in aggravation and mitigation was conducted in accordance with the Unified Code of Corrections. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—4—1.) In addition the trial court asked defendant's counsel to explain the differences to the defendant between being sentenced under the old and new statute. Prior to January 1, 1973, the statute in Illinois provided that a person convicted of murder shall be sentenced to imprisonment with a minimum of not less than 14 years. (Ill. Rev. Stat. 1971, ch. 38, par. 9—1.) After January 1, 1973, the statute provided for a minimum of "14 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term"; plus a parole term of 5 years. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(1), (e)(1).) Defendant elected to be sentenced under the old statute.

■■ After the sentencing hearing the court imposed a sentence of 20 to 40 years imprisonment which is within the proscribed statutory recommendations for the crime of murder under both the new and old statute. We have held that the trial court is given a great deal of discretion in sentencing and its decision should not be reversed or reduced unless there is substantial reason for doing so. (*People v. Bell* (1st Dist. 1974), 18 Ill.App.3d 130, 309 N.E.2d 344 (abstract opinion).) Considering the nature and circumstances of the crime, we find no substantial reason to reduce the sentence.

The judgment and sentence of the circuit court of Cook County are affirmed.

Affirmed.

STAMOS and LEIGHTON, JJ., concur.