THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROSILYN ELAINE JOHNSON, Defendant-Appellant.

Fourth District    No. 15109

Opinion filed March 30, 1979.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry and Marc D. Towler, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

On February 2, 1978, the defendant, Rosilyn E. Johnson, was indicted with five counts of murder in violation of section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1). The indictment alleged that the defendant killed Gregory Dorsey by stabbing him with a knife. Following jury trial, the defendant was found guilty of the lesser included offense of voluntary manslaughter and was subsequently sentenced to a term of 1 year, 6 months, to 4 years, 6 months.

On appeal, defendant contends that the evidence presented was insufficient to support her conviction for voluntary manslaughter and that the State was improperly allowed to introduce evidence of threats made by the defendant to Dorsey which occurred several months prior to his death.

At trial, the defendant testified that Dorsey came to her home during the evening of January 21, 1978. Defendant and her two children, one of whom had been fathered by Dorsey, resided with her mother. Dorsey remained there for a short time and then he and the defendant left around midnight. When Dorsey returned the defendant to her home later that morning, a conversation ensued in Dorsey's car concerning another man the defendant was dating and another woman that Dorsey was seeing. According to the defendant, this disagreement escalated to the point where Dorsey began slapping her. The defendant acknowledged that Dorsey was not hurting her "badly" at this time, but she was being harmed to the extent that she wanted to leave Dorsey's automobile. When she announced her intention to leave, Dorsey shoved her out of the car and into the snow, where he got on top of her. After eventually managing to elude Dorsey, the defendant ran toward her home with Dorsey in pursuit.

Defendant next stated that since she did not have a key to her home, she started "banging on the door." After a few seconds, the defendant's sister, Angela Johnson, opened the back door and the defendant rushed into the house, past a counter containing unwashed dishes and silverware. Defendant stated that, "As I entered the house, I saw a knife lying on the counter, I grabbed it and I swung." The defendant testified that she did not know exactly where Dorsey was when she swung the knife, and that she had no intention of killing him but intended only to stop him from pursuing her. Defendant then stated that she started running and heard Dorsey say, "Ros, you stabbed me in the heart." Prior to this time, defendant had not realized that she had actually stabbed Dorsey. The defendant further explained that she had her back to the decedent when she grabbed the knife, that she did not know exactly how close he was to her, and that she did a "half-turn" when she thrust the knife in Dorsey's direction. After observing Dorsey holding his hand to his chest, the defendant called an ambulance.

Angela Johnson, the defendant's 11-year-old sister, testified that when she opened the door of her home on the morning of January 22, 1978, she saw Dorsey following behind the defendant. Angela recalled that the defendant was pounding loudly on the door and that Dorsey was shouting at the defendant. After opening the door, Angela returned to her bedroom. On the way there she "heard somebody hit the washer and it sounded like the kitchen chairs moving." Angela then observed the defendant run past, crying, and heard the defendant tell their mother to tell Greg to leave her alone.

Officer Curtis Watson testified that when he arrived at the defendant's home, he found Dorsey's body on the kitchen floor. Watson stated that the interior of the residence did not appear to be in disarray.

After examining the area next to Dorsey's parked automobile, Watson concluded from the condition of the snow that there had been some type of struggle. Watson and another officer, Gary Wright, observed bloodstains on the back door and the steps leading to this door which were later identified as matching Dorsey's blood type. According to Wright, the knife that was recovered from the scene was approximately 8 to 10 inches in length.

The pathologist, Dr. Stanley Bobowski, testified that the autopsy performed on Dorsey's body revealed that the cause of death was a knife wound that penetrated Dorsey's heart "from the left going to right, slightly downward and slightly backward, up to a forty-five degree angle, sort of at an angle going in." Bobowski further testified that the angle and depth of the knife wound was of the type that could be termed either defensive or accidental or aggressive threat. Bobowski could not definitely say whether the person wielding the knife was facing the victim at the time the knife entered.

Defendant maintains that the evidence presented was insufficient to support a conviction for voluntary manslaughter because there was no showing that she intentionally or knowingly killed the victim. Defendant argues that the evidence at most only indicates that she acted recklessly in grabbing a large knife and thrusting it indiscriminately in the direction of the pursuing Dorsey.

■■ ■ Voluntary manslaughter occurs only in instances where a defendant's actions are caused by serious provocation or where defendant believes his actions to be justified but his belief is unreasonable. (*People v. Wright* (1975), 32 Ill. App. 3d 736, 745, 336 N.E.2d 18.) A defendant may be found guilty of voluntary manslaughter if, in taking another individual's life, he unreasonably believes he is in danger of losing his own life or suffering great bodily harm. (*People v. Saunders* (1974), 18 Ill. App. 3d 117, 122, 309 N.E.2d 350.) Section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b)), the section defining voluntary manslaughter under which defendant was found guilty, requires the mental state of intent or knowledge. On the other hand, involuntary manslaughter requires no felonious intent; the only mental state required is the conscious disregard of a substantial and unjustifiable risk. *People v. Bauman* (1975), 34 Ill. App. 3d 582, 589, 340 N.E.2d 178.

Defendant relies upon *People v. Hamilton* (1977), 48 Ill. App. 3d 456, 363 N.E.2d 193, where the defendant was also indicted for murder but found guilty of voluntary manslaughter. There, defendant testified that during a conversation, Bernie Richardson attacked him and began to beat him about the head. During the attack, a table was overturned and a loaded gun kept on the table was thrown to the floor. Defendant grabbed the weapon and ordered Richardson to leave defendant's house. Instead, Richardson grabbed defendant's arm and struck the defendant again.

During the ensuing struggle over the gun, Richardson was shot. There were no other witnesses to the incident. In holding that defendant's explanation was consistent with the physical evidence relating to how the incident occurred, this court determined that the evidence insufficiently supported his conviction of voluntary manslaughter beyond a reasonable doubt. This court concluded, however, that defendant's conduct by his own testimony in drawing a loaded weapon during the course of a quarrel was sufficiently reckless to reduce the degree of the offense to involuntary manslaughter. In the instant case, however, defendant did not testify that the killing was an accident; defendant admits that her act was voluntary.

■ It is quite clear that criminal intent may be shown by surrounding circumstances and may be inferred from the nature of defendant's act. Where it is shown that the defendant voluntarily and wilfully committed an act, the natural tendency of which was to destroy another's life, intent may be implied from the character of the act. (*People v. Koshiol* (1970), 45 Ill. 2d 573, 578, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209; *People v. Latimer* (1966), 35 Ill. 2d 178, 182-83, 220 N.E.2d 314.) The question of intent is one for the trier of fact and that finding will not be reversed on appeal unless the finding is inherently impossible or unreasonable. *In re Weigler* (1976), 37 Ill. App. 3d 478, 482, 346 N.E.2d 171.

It was not unreasonable for the jury to conclude from the facts and circumstances in the instant case that the defendant knowingly and intentionally killed Dorsey. Although defendant claimed she swung the knife, intending only to stop Dorsey from pursuing her, the jury was entitled to reject the defendant's version of how the stabbing occurred. Unexplained by defendant's account of the stabbing are the drops of blood matching Dorsey's blood type found on the back door and steps. The testimony of the pathologist indicated the possibility that the person inflicting the wound may have been facing Dorsey at the time. Although the pathologist stated the knife was thrust with moderate force, he also testified that the wound could be described as an aggressive threat type.

■ Moreover, the evidence clearly supports the jury's determination that the defendant killed Dorsey in the unreasonable belief that she was acting in self-defense. Defendant admitted that when Dorsey was beating her in the car, he was not beating her badly. There was no evidence that the defendant sustained any substantial injuries or that Dorsey had a weapon with him that night. It is the duty of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence. (*People v. Amos* (1977), 46 Ill. App. 3d 899, 901, 361 N.E.2d 861, 863.) In addition, it is not necessary that the trier of fact take the defendant's testimony as true and then search out a series of potential explanations to resolve the conflict between the physical evidence and the story given by the defendant so as to reach a

reasonable doubt. (*Hamilton*, 48 Ill. App. 3d 456, 458, 363 N.E.2d 193.) We conclude that there is sufficient evidence in the record to support beyond a reasonable doubt the jury's determination that the defendant knowingly and intentionally killed Dorsey in the unreasonable belief that she was acting in self-defense.

Defendant also contends that she was denied a fair trial by the introduction into evidence of threats made by the defendant concerning Dorsey several months prior to his death. Joyce Jones testified that the defendant stated to her in so many words during August or September of 1977 that the defendant would kill Dorsey if he ever did anything to upset the defendant. Candy Henderson testified that she observed the defendant in June of 1977 approach Dorsey with a baseball bat during an argument. Henderson also recalled other occasions in her presence where the defendant threatened Dorsey that "if you mess with me, I'll kill you." Defendant argues that these threats were too remote to constitute competent evidence.

■■ It is well established that threats made by an accused against the deceased prior to the commission of the criminal act are admissible into evidence as evidencing malice and criminal intent. (*People v. Lion* (1957), 10 Ill. 2d 208, 217, 139 N.E.2d 757.) In *Lion*, the defendant was charged with a murder which occurred on December 22, 1951. At trial, testimony was introduced concerning threats made by the defendant in May and July of 1951. This testimony was held to be properly admitted although the threats occurred several months before the killing. Moreover, in *People v. Jayne* (1977), 52 Ill. App. 3d 990, 368 N.E.2d 422, several witnesses testified as to threats made by one of the defendants to the victim on several occasions between 1961 and 1965. This testimony was deemed to be properly admitted at trial although the murder occurred in 1970. The court stated that the lapse of time between the threats and the killing affected only the probative force or weight of the evidence, not its admissibility. Furthermore, in *People v. Howell* (1977), 53 Ill. App. 3d 465, 368 N.E.2d 689, threats made to someone other than the victim indicating that the defendant intended to harm the victim were held to be admissible. Consequently, the testimony in the instant case, concerning threats made by the defendant occurring 5 to 8 months prior to the killing, were properly admitted into evidence for the purpose of showing criminal intent.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

TRAPP and GREEN, JJ., concur.