THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH WILLIAMS, Defendant-Appellant.

First District (2nd Division)    No. 79-379

Opinion filed June 10, 1980.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Kathleen Warnick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County defendant Kenneth Williams was found guilty of murder and was sentenced to 14 to 25 years imprisonment.

On appeal defendant contends that (1) certain testimony of State witnesses was improperly admitted into evidence; (2) statements made by the prosecutor during closing argument denied him a fair trial; and (3) he was not proved guilty beyond a reasonable doubt.

On January 5, 1978, Sharon Palmore was found shot to death in the defendant's apartment. Defendant admitted firing the fatal shot but claimed he did so in self-defense. There were no eyewitnesses to the shooting. Defendant, testifying in his own behalf, gave the following account of the shooting. He said he arrived home at about 10:30 p.m. on the date in question and found the victim there drinking with his wife. The victim told his wife that she had seen the defendant that day coming out of a girl friend's house. When defendant denied this, the victim cursed at him and called him a liar. Defendant then asked the victim to leave but she refused. Defendant left the room and when he returned he found the victim waving a knife, threatening to stab him worse than she had on a prior occasion. Defendant then got his gun which he kept inside the couch, and told the victim to put the knife down and leave. But the victim made stabbing motions with the knife so the defendant pushed her down on the couch. The victim said she was going to kill the defendant and as she started to stand up, the defendant, who was standing in front of her, fired the gun. Defendant said the victim continued to get up, tried to attack him, but he grabbed the knife out of her hand. As he did so, she grabbed him, at which time defendant noticed the blood. He got scared and ran down the back stairs throwing the knife toward a neighbor's yard. He went down to the basement apartment of Ronnie Samuel and put the gun in a shoe box in the closet. He then stopped in a tavern and upon

leaving was stopped by the police. Because he was scared he gave the police a wrong name and denied any involvement in the shooting. Later when he did begin to give the police the true account of what happened they stopped him until an attorney could be present.

Both the defendant and his sister testified that in 1975, the victim stabbed the defendant, causing him to be hospitalized for 3 months and undergo a colostomy. Defendant said at the time of his arrest he was unemployed because he was disabled from this stabbing. He stated that he did not bring charges against the victim for the stabbing. He testified that he had seen the victim 70 or 80 times after the stabbing; that he remained good friends with her; and that he never thought of getting even with her. He said since the stabbing he did not trust the victim but never wanted to hurt her. Defendant said on the date in question he intended to fire the gun over the victim's head to scare her and calm her down.

Defendant also testified that his wife left the room prior to the shooting. He said since the time of his arrest he had been incarcerated and had not spoken to his wife. Defendant said he spoke with his wife's mother a couple of times and she told him that her daughter told her that she would not testify for him because the State's Attorney had threatened to charge her with the murder if she did. Defendant denied telling his mother-in-law that he shot the victim because of something that happened a long time ago or that he would like to get back at the victim. He said he forgave the victim for the stabbing when he got out of the hospital.

On behalf of the State, the arresting officer testified that on his way to the scene, he observed the defendant who matched the description of the suspect wanted in the shooting. He said defendant refused to produce identification. After conducting a protective search of the defendant, the officer said he retrieved a wallet from defendant's pocket and discovered defendant's name which differed from the one defendant had given him. He said he noticed what appeared to be a blood stain on the defendant's shirt. The officer said after placing defendant under arrest, he went to the apartment of Ronnie Samuel. Samuel told him that the defendant had been there and led the officer to a closet from which a revolver, four live rounds of ammunition and one spent cartridge were recovered.

Samuel testified that a few minutes after midnight on January 6, 1978, the defendant with gun in hand came to his apartment and said he had just shot someone. He said the defendant was nervous and kept looking out the window saying he had to go south. He testified that the defendant said he wanted to leave something there, walked to the closet and then left the apartment.

The State presented evidence which indicated that the victim died from a gunshot wound; that there was a projectile entrance wound over

the victim's right clavicle, an exit wound on her right back and a grazing wound on her chin; that no powder burns were found on the victim's skin or clothing; that the victim's blood type which differed from that of defendant's blood type was found on defendant's shirt; and that the amount of alcohol found in the victim's blood indicated she was under the influence. Evidence was also presented which indicated that the gun recovered from the closet was a German-made revolver; and that both the bullet recovered from the victim's body and the spent cartridge recovered from the closet came from that gun.

Louise Harris, defendant's mother-in-law, called as a rebuttal witness on behalf of the State, testified that on Thanksgiving Day, 1977, while conversing with the defendant, he said there was going to be a revolution. When she asked him why, he stopped talking and then "said something about his stomach burning and he had to get revenge, something like that." She said defendant then asked another woman in the group if she was "hip to Biggs and Biggs" which Mrs. Harris explained was a funeral home. Mrs. Harris testified that defendant called her about two weeks before his trial and asked her why she hated him. Mrs. Harris said she responded that she didn't hate him but did not approve of what he had done. She told him if she knew why he did it she might feel better. She said he told her "it was something stemming from a long time but he couldn't discuss it on the phone." Mrs. Harris testified that she spoke to her daughter the day before this trial began and told her the State's Attorney's office was looking for her and wanted her to testify at the trial. Mrs. Harris said her daughter told her the reason she did not want to come into court and testify was because "she gave a statement that was true and she did not want to testify against her husband." Mrs. Harris denied ever telling the defendant that her daughter did not want to testify because she was afraid the State's Attorney's office would charge her with murder.

Investigator Holze, also called as a rebuttal witness on behalf of the State, testified as to his unsuccessful attempt to serve a subpoena on the defendant's wife, Lynette Williams. He said when he knocked on the door, a female voice asked who it was. He said he was a police officer looking for Lynette Williams. After a few moments passed, he knocked again and then opened the door. He stated a man standing there told him Lynette Williams had just gone down the back stairs.

## I.

Defendant contends certain testimony given by State witnesses was improperly admitted and denied him a fair trial.

## A.

Defendant argues that the statement Mrs. Harris gave in response to

the question as to why her daughter did not want to testify at trial, *i.e.*, that "she [the daughter] gave a statement that was true and she did not want to testify against her husband," was inadmissible hearsay depriving defendant of his rights of confrontation and cross-examination and violated his confidential communication privilege. Defendant argues that Mrs. Harris' statement was the equivalent of his wife testifying that the defendant did not shoot the victim in self-defense. Defendant also argues that Investigator Holze's testimony regarding an unsuccessful attempt to serve a subpoena on defendant's wife suggested a defense conspiracy to keep defendant's wife off the stand.

■■ We need not consider defendant's contention that the statement violated his confidential communication privilege as defendant makes that contention for the first time in his reply brief without discussion or citation of authority. Furthermore, defendant, by objecting to the admission of this statement at trial solely on hearsay grounds, has waived objection to the statement on any other grounds on appeal. *People v. Jones* (1975), 60 Ill. 2d 300, 307, 325 N.E.2d 601.

It is the State's position that the testimony by both Mrs. Harris and Investigator Holze was proper rebuttal to defendant's statement that the State had threatened to charge his wife with murder if she testified for him.

■■■ Rebuttal evidence is that which explains, repels, contradicts, or disproves evidence produced by the accused. (*People v. Plair* (1977), 51 Ill. App. 3d 75, 80, 366 N.E.2d 410.) Investigator Holze's testimony to the effect that the State wanted defendant's wife to testify was clearly admissible to rebut the defendant's testimony to the effect that the State threatened the wife in order to prevent her from testifying. Mrs. Harris' testimony explains why her daughter did not testify which rebuts the explanation given by the defendant. However, Mrs. Harris' testimony, in court, of a statement made out of court, by a declarant who did not testify at trial and was not subject to cross-examination, and the statement being considered for the truth of the matter asserted therein constituted objectionable hearsay. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738.) Our supreme court has stated that any rebuttal must be through admissible evidence. (*McGrath v. Rohde* (1972), 53 Ill. 2d 56, 61, 289 N.E.2d 619.) The State has not suggested any grounds upon which inadmissible hearsay may properly be admitted in order to rebut the defendant's testimony. However, even assuming the admission of the statement to be error, we do not find it so prejudicial as to require reversal. If there is competent evidence, independent of the erroneously admitted evidence, which establishes beyond all reasonable doubt the guilt of the defendant, the verdict must be affirmed. (*People v. Watkins* (1975), 34 Ill. App. 3d 369, 374, 340 N.E.2d 92.) Applying this principle to

the present case, we do not find that the admission of the statement constituted harmful error.

### B.

Defendant argues that Mrs. Harris' statement that two years before the incident occurred the defendant told her "something about his stomach burning and he had to get revenge" was improperly admitted into evidence because of the statement's remoteness and the fact that it was not specifically directed at the victim.

Threats made by an accused against the deceased prior to the commission of the criminal act are admissible in evidence to show malice and criminal intent. (*People v. Lion* (1975), 10 Ill. 2d 208, 217, 139 N.E.2d 757; *People v. Johnson* (1979), 70 Ill. App. 3d 149, 154, 388 N.E.2d 225.) A threat by the accused to kill or injure a person other than the deceased or a mere charge of a general nature not directed to any particular person is not admissible to show malice toward the deceased. (*People v. Sorrells* (1920), 293 Ill. 591, 596, 127 N.E. 651.) The threat must in some way be linked to the victim. *People v. Watkins* (1975), 34 Ill. App. 3d 369, 374, 340 N.E.2d 92.

Mrs. Harris testified that defendant made this statement to her on Thanksgiving Day in 1977. The shooting occurred on January 5, 1978. Thus, the alleged statement was made approximately 1½ months, not 2 years, as defendant contends, before the incident occurred and is not too remote. See *People v. Johnson*; *People v. Wood* (1979), 72 Ill. App. 3d 919, 923, 391 N.E.2d 206.

In *People v. Scott* (1918), 284 Ill. 465, 474, 120 N.E. 553, a case relied upon by the defendant, our supreme court stated:

> "An expression, to be admissible as a threat, must be of such character or made under such circumstances as to indicate a hostile purpose on the part of the speaker. The language used, or the circumstances under which used, must be broad enough to include the injured person within its terms, but threats, even against third persons, may be admissible where the connection between them and the deceased is such that under certain circumstances the threats would import harm to or hostility toward the deceased. [Citations.]"

Here, the language used and the circumstances under which it was used were broad enough to include the victim within its terms. The record indicates that the victim stabbed the defendant in the stomach two years prior to the incident, causing him to undergo a colostomy and three months hospitalization. The burning in his stomach obviously referred to this condition. Defendant's revenge could only be directed against the person who caused the condition, the victim. Under these circumstances,

the connection between the statement and its relationship to the victim is so strong as to import harm or hostility toward the victim. *Cf. People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 713-14, 377 N.E.2d 1077.

## C.

Defendant argues that the nonexpert opinions given by both the microanalyst and the pathologist to the effect that the victim was not shot within 18 inches because they found no powder burns on the victim's clothing or skin jeopardized his self-defense claim. The victim would not have posed an imminent threat at a distance much over 18 inches.

As to the testimony of the microanalyst, the defense did not object to it on this basis at trial and thus has waived its consideration on review. (*People v. Jones* (1975), 60 Ill. 2d 300, 307, 325 N.E.2d 601.) Regardless of waiver, defendant's contention as to the microanalyst is without merit. At trial, he was qualified and accepted as an expert in his field which he stated involved the examination of physical evidence. He testified that upon examination, he did not find any powder burns on the clothing of the victim. He did not give his opinion as to what this indicated.

■ It was the forensic pathologist who testified that if a standard U.S. gun was used and there were no powder burns on the victim's skin, which he found to be the case here, then, the shot was fired from a distance greater than 18 inches, provided there was no overlying clothing. It had already been brought out that the gun used here was of a foreign make. Defendant's objection to this testimony as being outside the witness' expertise was overruled. This witness had been qualified and accepted as an expert in the field of forensic pathology which he stated included the detection of powder burns on a victim's skin. Nothing contrary to this was presented by the defense. Furthermore, as the State points out, defense counsel himself in closing argument told the jury that defendant had testified that he found the gun 36 to 48 inches away from the victim.

## II.

■ Defendant contends improper remarks made by the State in its closing argument denied him a fair trial. Defendant argues that the State erred in commenting on the defendant's right to remain silent by saying, "Don't you think you would have told the police it was self-defense if it was." The record indicates that no objection to this comment was made at trial and it was not included in defendant's written motion for new trial, thus defendant waived his right to object to it on review. *People v. Linus* (1971), 48 Ill. 2d 349, 355, 270 N.E.2d 12; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

The second comment which defendant alleges was improper was made by the prosecutor when he was commenting on the fact that the

knife defendant said the victim had was never recovered. The prosecutor stated, "Yes, we looked out there where he said he threw the knife and this happens all the time too—." The defense's objection was sustained. ■■ The State may properly emphasize the absence of pertinent evidence (*People v. Peter* (1973), 55 Ill. 2d 443, 461, 303 N.E.2d 398, *cert. denied* (1974), 417 U.S. 920, 41 L. Ed. 2d 225, 94 S. Ct. 2627), which in this case would include comment about the missing knife. However, the State may not argue facts which are not founded upon the evidence presented. The comment complained of was improper to the extent that it indicated a search for the knife was conducted, as no such evidence of a search is contained in the record. However, the trial court's prompt action in sustaining the objection cured any prejudice which may have resulted. *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200.

### III.

Defendant argues that his self-defense claim presented a reasonable hypothesis of innocence which the State failed to disprove beyond a reasonable doubt.

Where, as here, the only evidence in a prosecution for homicide is circumstantial evidence, the guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis. (*People v. Lewellen* (1969), 43 Ill. 2d 74, 78, 250 N.E.2d 651.) However, this is not to say that the State must prove guilt beyond any possibility of a doubt. (*People v. Murdock* (1971), 48 Ill. 2d 362, 367-68, 270 N.E.2d 21, *cert. denied* (1971), 404 U.S. 957, 30 L. Ed. 2d 274, 92 S. Ct. 324.) Rather, it is necessary only that proof of circumstances be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. *People v. Williams* (1977), 66 Ill. 2d 478, 484-85, 363 N.E.2d 801.

■■ Even though the ultimate burden is on the State to prove that defendant's act was criminal, where defendant admits firing the fatal shot, evidence must be shown of circumstances justifying, mitigating, or excusing his act. (*People v. Wilkes* (1971), 2 Ill. App. 3d 626, 630, 276 N.E.2d 761.) Defendant claims he acted in self-defense. The issue of self-defense is a question of fact. (*People v. Clemens* (1972), 9 Ill. App. 3d 312, 316, 292 N.E.2d 232.) Where, as here, the defendant's statement is contradicted by facts and circumstantial evidence, the trier of fact need not believe the statement of the defendant even though not directly contradicted by other eyewitnesses. (*People v. Wilkes.*) With these principles in mind and upon a careful examination of the record, we find the jury's verdict to be supported by substantial evidence. We will not overturn it on review.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.