THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERYL J. STELL, Defendant-Appellant.

Third District    No. 3—91—0313

Opinion filed January 10, 1992.

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellant.

Erik I. Blanc, State's Attorney, of Pekin, and Don McKay, of Downers
Grove (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office,
of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Teryl Stell, appeals from her conviction for theft
following a bench trial in the circuit court of Tazewell County. The
trial court sentenced the defendant to 30 months' probation, ordered
her to pay a fine of $5,000, and to perform 600 hours of public ser-
vice.

The defendant contends on appeal she was not proven guilty be-
yond a reasonable doubt. It is axiomatic that a court of review will
not set aside a criminal conviction unless the evidence is so unsatisfac-
tory that a reasonable doubt of the defendant's guilt is created. (*Peo-
ple v. Hooper* (1989), 133 Ill. 2d 469, 552 N.E.2d 684.) Viewing the
evidence in the light most favorable to the State convinces us that a

rational trier of fact could have found the defendant guilty of theft beyond a reasonable doubt.

The evidence at trial established the defendant worked at Martin Foods in Morton, Illinois, from 1974 through September 8, 1987, where she was employed as the head cashier. As head cashier, the defendant was one of the few employees trained to operate the office cash register. The defendant also was the only employee at Martin Foods who regularly did not work on Wednesdays and Sundays.

Bert Zehr, the computer manager at Martin Foods, testified that during the morning of September 5, 1987, while running a computer check on soda proceeds, he noticed approximately $185 worth of voids on his computer. Voids result from returns of merchandise and cashier errors. Returns of merchandise signify that money leaves the store in contrast to merely being a cashier error. Zehr found the amount of voids to be unusually large. Later that day, Zehr received information indicating an additional $259.95 in voids had been rung up on the office register sometime between 2 a.m. and 7:30 a.m.

On Monday, September 7, 1987, the defendant was working at the office register when Zehr came to work at 5:45 a.m. Zehr, already suspicious of the defendant's actions, entered through a back door in order to run another computer check on the office register without the defendant's knowledge of such. At 5:53 a.m., Zehr ran a report on the computer, which showed $100 worth of voids on the office register. Zehr ran a second report two minutes later which showed $220 worth of voids on the office register. Zehr concluded that during those two minutes somebody in the office was voiding sales off the register while his reports were being conducted. The only person working in the office at that time was the defendant.

Zehr also determined that no items were voided off the two other night group operating cash registers in the store since those registers had been reset to zero. During this period, however, 213 items had been voided off the office register. Zehr was further able to conclude that money belonging to Martin Foods had actually left the store that day because the two other night group cash registers had not rung up as much in sales as the amount voided off the office register. Zehr identified the defendant as the operator of the office register.

Zehr further maintained that a detailed tape of transactions made on the office register for Monday, September 7, 1987, was recovered from the garbage in the office on that date. From examining the tape, Zehr was able to determine that dark markings were made on the tape by someone manipulating the printing wheel so that information was being printed over itself. He was able to pinpoint the time of the

occurrence at between 5:49 a.m. and 5:56 a.m. on September 7, 1987, when the defendant was working in the office and while Zehr was running his reports.

Don Harris, the manager at Martin Foods, stated that he compiled a listing of all voids made from 1984 through and including 1987. The records showed that the percentage of voids decreased dramatically on the days of the week the defendant did not work, Wednesdays and Sundays. He also pointed out that after the defendant was fired the amount of voids decreased by $600 per week. Harris noted the defendant was the only employee who regularly took Wednesday and Sunday off.

Officer Michael Dunlap of the Morton police department related that as the investigating officer in the instant case he prepared summaries of void records for Martin Foods made between 1984 and 1987. Dunlap, essentially confirming Harris' testimony, found that the number of voids made on Wednesdays and Sundays was significantly lower than on the other days of the week.

Pauline Vaughan, a cashier at Martin Foods, testified that while working at Martin, she and the defendant went out for lunch or shopping three to four times per week and that the defendant would purchase outfits perhaps once per week. She recalled how the defendant always dressed nicely and wore jewelry.

Kathy Bassette, a neighbor of the defendant, recalled that between 1984 and 1987 she observed a Jeep, two Firebirds, a Corvette, and a Blazer at the defendant's residence. She also observed two snowmobiles, two three-wheelers, a bass boat, porch construction, deck construction, and in-ground swimming pool construction. She further observed a UPS truck delivering packages at the defendant's residence three to four times per week.

The defendant's husband Randall Stell testified he is employed by Caterpillar Tractor Company as a photographer and also maintains his own photography business. He indicated that from 1984 through 1987 his parents had given him cash, which he deposited in his and the defendant's account. Randall further related that the defendant's parents had given him cash and that his mother-in-law had given the defendant's son, Jason, a $10,000 CD for college and that his father-in-law also gave him cash on occasion. He added that his parents were still giving money to the defendant and him and that the last check he received from his parents was in the amount of $9,999.95 in May of 1989.

The defendant's father, James Theyse, testified that during the years 1984-1987 he had given his daughter $4,000 to $5,000 per year

and that in 1986 he started a college fund for Jason. Joanne Theyse, the defendant's mother, stated she had always given money to Jason, and that she had given him the $10,000 CD and other gifts totalling $7,000.

Virgil Ligenfelter, Randall's stepfather, confirmed that he had given $29,400 and an additional $9,995 in 1989 to the defendant and Randall. He gave the $29,400 in cash.

The defendant testified that in addition to her and Randall's earnings, they had inherited $25,000 from Randall's grandfather, and received an additional $27,000 from the sale of a house in 1978. With these funds, the defendant and Randall purchased stock and a bass boat. The boat was sold in 1984 for $6,000. In 1985, they received $8,000 in insurance proceeds from the damage to two snowmobiles in an automobile accident and did not replace the snowmobiles. She also confirmed receiving amounts of money from various members of her family.

The defendant contends that the State failed to establish the *corpus delicti* beyond a reasonable doubt. Defendant maintains that the State failed to prove, by direct evidence, an asportation.

The issue presented is whether the State proved the *corpus delicti* of the offense charged. In *People v. Lambert* (1984), 104 Ill. 2d 375, 378, 472 N.E.2d 427, our supreme court, following their dictates in *People v. Kirilenko* (1953), 1 Ill. 2d 90, 115 N.E.2d 297, stated:

> "It is a basic concept in criminal law that proof of a criminal offense involves the proof of two distinct propositions or facts beyond a reasonable doubt. First, that a crime was committed, and second, that it was committed by the person or persons charged. In other words, *** 'the *corpus delicti* must be proved and the identity of the defendant as the guilty party must be established.' "

*Corpus delicti* may be proved by circumstantial evidence or by the defendant's own testimony given in defense which may be judged by its improbabilities. (*People v. Daniels* (1983), 113 Ill. App. 3d 523, 447 N.E.2d 508.) Intent and unauthorized control can be proved by circumstantial evidence. (*People v. Meyer* (1982), 110 Ill. App. 3d 673, 442 N.E.2d 957.) Where an element of the State's case is proved circumstantially, the proof must be of a conclusive nature, producing a reasonable and moral certainty of the defendant's guilt and excluding any reasonable hypothesis of innocence. (*People v. Williams* (1980), 85 Ill. App. 3d 850, 407 N.E.2d 608.) The trier of fact need not accept the defendant's version of the facts but may consider its probability in

light of the surrounding circumstances. *People v. Talach* (1983), 114 Ill. App. 3d 813, 448 N.E.2d 638.

In the instant case, the trial court had to find: (1) Martin Foods was the owner of the money in question; (2) the defendant knowingly exerted unauthorized control over the money; (3) the defendant intended to permanently deprive Martin Foods of the use or benefit of the money; and (4) the money which the defendant controlled without authorization had a value in excess of $300.

The evidence shows that during the period of September 4, 1987, through September 7, 1987, the defendant appropriated money belonging to Martin Foods in excess of $300. What Zehr uncovered while reviewing the computer data has not and cannot be explained or attributed to anyone other than the defendant. The defendant was the only person working in the store office at the time, was the only person working in the office on the very register showing a discrepancy, was the only employee at work on September 7, 1987, trained to operate the office register, and there was no evidence of anyone returning large quantities of merchandise to Martin Foods which would explain the unusually large amount of voids. To further corroborate the State's case, the two other night group cash registers had not rung up as much in sales as the amount voided off the office register. Add to this evidence the other uncontradicted evidence showing that the percentage of voids over a four-year period dramatically decreased on those days on which the defendant did not work, coupled with the fact that the voids decreased weekly by over $600 after the defendant was fired, and we find a factually one-sided case. Therefore, after reviewing the evidence in the light most favorable to the State, we find a rational trier of fact could have found the elements of theft established beyond a reasonable doubt.

For these reasons, we affirm the judgment of the circuit court of Tazewell County.

Affirmed.

BARRY, P.J., and HAASE, J., concur.