THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES BOUCHER, Defendant-Appellant.

Third District   No. 76-353

Opinion filed July 27, 1978.

Robert E. Senechalle, Jr., of Belmonte, Kagan & Hibler, and Plunkett, Nisen, Elliott & Meier, both of Chicago, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

The Peoria County grand jury charged defendant James Boucher with delivery of more than 30 grams of lysergic acid diethlamide (LSD) in violation of section 401(a)(8) of the Controlled Substances Act. (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(a)(8).) Defendant's first trial ended as a mistrial when the jury was unable to reach a verdict. In a second jury trial defendant was convicted and sentenced to 15 to 25 years imprisonment.

On February 26, 1976, Don Middleton called Officer John Stephens, an agent of the Multi-County Narcotics Enforcement Group, and told him he could secure the pound of mescaline[1] which Stephens had previously indicated he wished to purchase. Stephens, accompanied by IBI agent Harold Brignadello, met Middleton and Roy Crebo later that same day at a designated location in Morton. After instructing the two officers to remain at that location, Middleton and Crebo, later joined by William Johnson, went to pick up the drugs. The three men testified that they drove in Crebo's auto to Elizabeth Street in Peoria where Johnson entered the rear apartment of a duplex-type building and returned to the auto with a brown paper bag containing one-half pound of white mescaline. Johnson stated he received the half-pound from defendant Boucher and that two other men, Stallings and Magner, were also present in the apartment.

Johnson and his companions returned to the Morton location where Officers Stephens and Brignadello had been joined by Ronald Binkley and Lonnie Kristler. Johnson advised Officer Stephens that his supplier would allow him to bring only one-half pound of mescaline and that he was instructed to obtain the money for the first half and take it to his supplier before the second half-pound could be secured. The agents agreed to the arrangement, but asked to accompany Johnson to get the second half-pound. Johnson refused to take the officers to his supplier, but allowed them to follow him to The Joynt, a Peoria business establishment not far from defendant's apartment. Kristler, Binkley and Middleton

---

[1] During trial the parties stipulated that the substance referred to as mescaline was LSD.

accompanied Johnson in Kristler's auto to the Elizabeth Street apartment. Johnson again entered alone and returned to the auto with another half-pound of drugs. Johnson testified he gave Boucher about $540 of the $800 the officers had paid him and kept about $225 for himself. Johnson, Crebo, Middleton, Kristler and Binkley were all arrested after Johnson returned to The Joynt and transferred the second half-pound to Officer Stephens. Johnson took Stephens to the Elizabeth Street apartment where he claimed to have received the drugs, but defendant Boucher was not there. When arrested later that evening Boucher had in his possession $340, including one $20 bill which was marked.

At trial defendant testified that he lived in the front half of an Elizabeth Street duplex which was owned by his parents. He denied having any contact with William Johnson on the date in question and claimed the money he had in his possession when arrested was rent money paid to him earlier that evening by his roommate Charles Closen, and the man who lived in the rear apartment, Butch Stallings.

During cross-examination defendant was asked if he told Jerry La Grow, director of the Peoria MEG unit, that he had expenses of $200 or at least $100 a day. Defendant denied making any such statement. In rebuttal the State called Officer La Grow and the following colloquy took place:

"Q. You did have occasion to question the Defendant, did you not?

A. Yes, sir.

Q. Did you have occasion to question him concerning narcotics?

A. Yes, sir.

Q. Would you tell the ladies and gentlemen of the Jury what you asked him and what he responded with respect to narcotics?

A. I asked him if he used drugs and he told me yes. I asked him how long he had used drugs and he told me about seven years. He told me since he was 14 years old he had been using drugs. I asked him what kind of drugs he used. He said everything, all kinds, marijuana, heroin, cocaine. I asked him if he was addicted to heroin and he said yes. I asked him when the last time was that he had had a fix and he said 'What do you mean?' I said, 'When was the last time you shot up?' and he said, 'Two days ago.' I asked him how much stuff he used and he gave me a dollar figure, and I'm sorry, I can't recall how much it was. I know that it was over $100, but the exact amount I don't recall. I knew I was surprised when he told me the amount because I didn't feel that people in this area—."

Defense counsel objected to this testimony on the ground that he was surprised by it. The objection was sustained, but only the officer's final

statement concerning his surprise over the amount of drugs was ordered stricken from the record. Officers Brignadello and Stephens were recalled by the State, and both testified they were present when defendant made the alleged statement. Each man confirmed the content of the statement as related by La Grow and further indicated that, in addition to themselves and La Grow, two other officers, State Trooper Pollack and IBI Agent Singer, were present when defendant made the alleged statement. Defendant was called in surrebuttal and denied making the statement.

Prior to trial defendant had filed a discovery motion in which he requested the State to furnish him with "Any written or recorded statements and the substance of any oral statements made by the accused * * *, and a list of witnesses to the making [sic] acknowledgment of such statements." The State responded to this request "See Police Reports Attached." The only attached report conceivably relating the substance of defendant's statement was a description and personal data sheet prepared by Officer Singer which indicated that defendant had used drugs for seven years and was a "habitual" user of "cocaine/heroin."

■■■ On appeal defendant contends the State's failure to comply with the mandatory disclosure requirements of Supreme Court Rule 412(a)(ii) resulted in prejudice to him by denying him his right to a fair trial. We agree.

Supreme Court Rule 412 provides in part:

> "(a) [T]he State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
>
> * * *
>
> (ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements." (Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(ii).)

The legislature enacted this provision to afford the accused protection against surprise, unfairness and inadequate preparation. (*People v. Shegog* (3d Dist. 1976), 37 Ill. App. 3d 615, 346 N.E.2d 208; *People v. Rand* (2d Dist. 1975), 29 Ill. App. 3d 873, 331 N.E.2d 15.) Compliance with the Rule is mandatory (*People v. Musgray* (2d Dist. 1976), 37 Ill. App. 3d 48, 344 N.E.2d 708), being excused only if the prosecutor was unaware of the existence of the statement prior to trial and could not have become aware of it in the exercise of due diligence. (*Shegog.*) Under 412(a)(ii), the State is required to disclose not only confessions, as required by section 114—10(c) of our Code of Criminal Procedure of 1963, but "any and all statements known to it which have been made by a

defendant." *People v. Watkins* (1st Dist. 1975), 34 Ill. App. 3d 369, 340 N.E.2d 92, 96; Ill. Ann. Stat., ch. 110A, par. 412, Committee Comments, at 680 (Smith-Hurd 1976); Ill. Rev. Stat. 1975, ch. 38, par. 114—10(c).

In the present case it is clear that the State was aware of defendant's statement prior to trial. Officer La Grow testified that he advised the assistant State's Attorney of the statement before defendant's first trial. Moreover, introduction of the statement in rebuttal was obviously a calculated maneuver of the prosecutor who laid a foundation for the statement by asking otherwise objectionable questions of the defendant during cross-examination. *People v. Irish* (1st Dist. 1966), 77 Ill. App. 2d 67, 222 N.E.2d 114.

The State's response to defendant's discovery motion failed to satisfy the requirements of Rule 412(a)(ii). While Officer Singer's report indicated that defendant had been using drugs for seven years and was an "habitual" user of cocaine and heroin, the report failed to note that defendant admitted being addicted to heroin; that he admitted using amounts of heroin costing more than $100 a day; and that he admitted "shooting up" only two days prior to the conversation. In short, the report did not adequately disclose that part of defendant's alleged oral statement which was most prejudicial to him at trial.

■■ Furthermore, the State failed to provide defendant with a list of witnesses to the making or acknowledgment of his alleged statement. The State contends this second requirement of 412(a)(ii) was satisfied because the defendant was well aware of Officer La Grow's identity, the officer's involvement in the entire transaction being frequently noted throughout the police reports supplied to the defendant. We cannot agree. Although the identity of La Grow and the other officers was apparent in the police reports, the reports did not indicate that the officers were witnesses to any statement made by the defendant. Rule 412 is not designed to require defense counsel to make assumptions as to which of the persons named in voluminous police reports were present at the time defendant made a statement. (*People v. Rand* (2d Dist. 1975), 29 Ill. App. 3d 873, 331 N.E.2d 15.) Since the State's answer to defendant's discovery motion failed to relate the substance of defendant's alleged oral statement and failed to supply defendant with a list of witnesses to the statement, the mandatory requirements of Supreme Court Rule 412(a)(ii) were not met.

The State, however, claims it was not required to comply with Rule 412(a)(ii) in this case. Relying on *People v. Abbott* (4th Dist. 1977), 55 Ill. App. 3d 21, 370 N.E.2d 286, it is argued that Rule 412(a)(ii) applies only if the accused's statement has been reduced to written form. The State contends it had no duty to reduce the oral statement to writing merely for the purpose of disclosing the substance of such statement to the accused. The *Abbott* case is clearly distinguishable. In *Abbott* the court was

interpreting section 412(a)(i), not 412(a)(ii). A simple reading of the two sections reveals that the requirements of each are significantly different. Section 412(a)(i) relates to statements made by witnesses and requires disclosure only if those statements are contained in written or recorded memoranda or reports. Rule 412(a)(ii), on the other hand, relates to statements made by the accused and requires disclosure of both written statements and "the substance of any oral statements." The *Abbott* decision mentioned the distinction between the two sections and cited *People v. Rand* (2d Dist. 1975), 29 Ill. App. 3d 873, 331 N.E.2d 15, as standing for the proposition that a defendant's oral statements are absolutely discoverable. (*Abbott*, 55 Ill. App. 3d 21, 24, 370 N.E.2d 286, 289.) We agree that Rule 412(a)(ii) "requires the State to disclose any and all statements * * * made by a defendant." (*Watkins*, 34 Ill. App. 3d 369, 373, 340 N.E.2d 92, 96.) The rule was applicable to defendant's statement in this case, and the State failed to satisfy the rule's requirements.

Nevertheless, the State argues that its use of the undisclosed statement at trial does not necessitate reversal of defendant's conviction. Emphasis is placed on the fact the statement in this case was introduced in rebuttal, rather than in the State's case-in-chief. We are asked to distinguish cases such as *Shegog* on the grounds that defendant's statements in the instant case was used for impeachment only, whereas the statement in *Shegog* was used as substantive evidence of defendant's guilt.

In the first place, it is clear that the prosecution did not limit its use of defendant's statement to impeachment purposes only. During closing argument the State's Attorney made reference to the alleged statement and exhorted the jury to consider it as evidence of defendant's motive.

> "[W]hat possible motive does the defendant have? * * * I think you heard this morning why he needs a large amount of money. Quite a bit of money. * * * How did he afford $100 to $300 a day on the income of $92 a week? * * * The addiction provides something else that need not be shown in this case. It provides motive. * * * Consider motive, ladies and gentlemen, in your deliberations."

We find nothing in *Shegog* or any other case interpreting Rule 412(a)(ii) to suggest that the decisions in those cases would have been different had the undisclosed statement been introduced in rebuttal instead of as part of the State's case-in-chief. Rather, in each instance, reversal of the defendant's conviction was based on the possible prejudicial effect which use of the statement may have had on the accused and his defense. (*Shegog*; *Rand*.) We are persuaded that defendant Boucher was prejudiced by the State's use of his alleged statement. The evidence against defendant was not so overwhelming as to render harmless the

erroneous admission of the undisclosed statement. The only witness able to directly link defendant to the sale of the drugs was William Johnson, a person who was charged with the same offense as defendant and who had been promised leniency in exchange for his testimony. In fact, every nonpolice witness in the case had been charged with the sale of a controlled substance and had either been promised or expected leniency in exchange for his testimony. Defendant Boucher did have a marked bill in his possession when arrested, but his explanation of how he had come to possess that bill was not so incredulous as to require disbelief. The evidence in the case was closely balanced, turning upon the credibility of the defendant as opposed to the credibility of the witnesses against him. The erroneously admitted statement allowed the jury to characterize defendant as a heroin addict who "shot up" amounts of that drug costing more than $100 per day. "In a case where the credibility of the witnesses was the paramount issue, the potential impact of such evidence on the jury is incalculable." *People v. Young* (1st Dist. 1978), 59 Ill. App. 3d 254, 257-58, 375 N.E.2d 442, 444.

■■ Furthermore, coming in rebuttal the statement was one of the last portions of testimony heard by the jury before it began its deliberations. Defense counsel had little opportunity to react to or to counteract the effect of it. The importance of the statement is further evinced by the prosecutor's frequent reference to it in closing argument and the fact the first jury, who did not hear the statement, was unable to reach a verdict. The combination of all these factors leads us to conclude that defendant's conviction was tainted by the State's failure to comply with Supreme Court Rule 412(a)(ii). We find the conviction should be reversed and the cause remanded for a new trial.

We note that defendant raised several other issues on review, but in light of our disposition of the case we find it unnecessary to discuss those matters.

The judgment of the Peoria County Circuit Court is reversed and the cause remanded for a new trial.

Reversed and remanded.

STOUDER and SCOTT, JJ., concur.