THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL CARTER, Defendant-Appellant.

First District (4th Division)   No. 83—136

Opinion filed December 27, 1984.—Rehearing denied January 24, 1985.

Steven Clark and Scott Graham, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Mary Louise Kiernan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ROMITI delivered the opinion of the court:

Following a jury trial the defendant was convicted of rape, deviate sexual assault and attempted armed robbery, receiving concurrent 40-year sentences for those crimes, to be served consecutive to prior concurrent 40-year sentences he had received on unrelated charges. On appeal defendant contends: (1) he was denied a fair trial by the prosecution's introduction of evidence that he was a gang member, had been arrested for other crimes, and had committed an unrelated offense just prior to his arrest; (2) improper prosecutorial comments in final argument to the jury denied him a fair trial; (3) the extended-term sentence for attempted armed robbery was improper where that offense was of a lesser class than the other two offenses; (4) the sentences must be vacated because the trial court failed to state on the record that it had found the factors necessary to permit extended terms and consecutive sentences; (5) those sentences must be vacated because the extended terms and the consecutive sentences were impermissibly based on the same conduct; (6) the trial court abused its discretion in sentencing the defendant to such lengthy terms.

We affirm defendant's convictions, reduce his sentence for attempted armed robbery to 15 years, and affirm his sentences in all other respects.

The prosecution's evidence at trial established the following: On April 27, 1981, Karen D., accompanied by her one-year-old daughter, walked to the 16-story housing project building where her mother resided on the ninth floor. As she waited outside the building for the elevator she observed a man approaching her. It was a sunny, clear day and the man stood about seven feet from her. She identified him in court as the defendant. She and her daughter got on the elevator, followed by the defendant. As the elevator began to rise, the defendant

pushed the emergency stop button, pointed a knife with a 12-inch blade at Karen's stomach, and demanded her money and jewelry. When Karen said she did not have any the defendant forced her at knifepoint to turn her back to him and remove all her clothes, telling her he would make her pay for "being stupid." With Karen's daughter crying in the corner behind the defendant, Karen was made to get down on her knees, at which point defendant placed his penis in her mouth. He then made her lie down on her back as she pleaded with him not to harm her or her daughter and had sexual intercourse with her as he held the knife to her neck. After two or three minutes the defendant got up. Karen's daughter had crawled beside her mother and was crying. The defendant told her to "shut that bitch up" before he "cut her head off." Defendant then released the emergency button and left the elevator at the fifth floor, telling Karen not to dress for 15 minutes, not to leave for 30 minutes, and not to call the police because he would come back. Karen immediately went to her mother's apartment, where she called the police. When they arrived she described the defendant to them as five feet eight or nine inches tall, 145 pounds, dark complected, with long hair parted in the middle, a hairnet, dimples, a red eye, and a thick gold chain double-wrapped around his neck.

Karen was taken to the hospital, where a medical examination and tests revealed the presence of sperm in her vagina and evidence of recent trauma to her cervix, causing vaginal bleeding.

That evening at the police station, Karen examined three books of photographs and identified a picture of the defendant as the man who had attacked her. At about one a.m. on April 29, Karen was sleeping at her mother's apartment when a group of people brought the defendant into the apartment. Karen identified him as the man who had raped her. The defendant struck one individual and tried to run but was subdued by the people there. The police were then summoned.

The defense rested without presenting evidence.

## I

■ We first consider defendant's contention that the State improperly introduced evidence of his gang affiliation, of his having been arrested before, and of his commission of a crime immediately prior to his arrest.

The alleged gang affiliation evidence consisted of testimony that the defendant had a tattoo stating "El Rukin" above his left nipple. The first testimony concerning this came from Officer Dennis Bolda,

who was asked if he observed anything unusual about the defendant when he was taken to the hospital after his arrest. In addition to stating that the defendant was badly bruised and was wearing a double gold chain, the officer stated that defendant had the tattoo above his left nipple. No objection was offered to this testimony. Later another police officer, Katherine O'Brien, was asked by the prosecution to describe what she observed about the defendant at the hospital. She described his bruises, his chain, and the tattoo. A defense objection to this response was overruled. Defense counsel failed to specify the nature of his objection, and indeed, on cross-examination of Officer O'Brien, he elicited more details from her concerning the tattoo.

We do not find that the defendant was improperly prejudiced by this evidence. Although not included in the record on appeal, it is apparent that a photograph of the defendant which was taken at the hospital and was introduced into evidence depicted him with his shirt open or off and revealed the tattoo. Defense counsel had previously impeached Karen with her failure to include in her detailed description of the defendant the fact that he had a mole on his face and pierced ears. The prosecution may well have anticipated that defendant would argue to the jury that Karen's omission of any mention of the tattoo also impeached her testimony. Thus the prosecution elicited from Karen the fact that defendant left his shirt on in the elevator and they elicited from the police the information that the tattoo was not visible when the defendant had on his shirt. Given this proper purpose for the introduction of the evidence concerning the tattoo the fact that it might have also tended to prejudice the defendant was not a sufficient basis to exclude it. *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840.

■ Defendant also contends that he was prejudiced when the prosecution adduced evidence that Karen had identified his photograph from an array of photographs contained in several books shown to her at the police station. No objection was made to the admission into evidence of the book of photographs, nor has that book been included in the record on appeal so as to establish whether the photographs bore such incriminating information as the name of a police department or dates antedating the date of the current offenses at issue. (See *People v. Wheeler* (1979), 71 Ill. App. 3d 91, 388 N.E.2d 1284.) Indeed, the record establishes that a jury request to examine this book was denied by the trial court. Defendant correctly notes that at one point a police officer testified that the photographs were of persons "arrested in the CHA," but defendant's objection to this was sustained, and the jury was instructed to disregard any reference to arrests. We do not find

that this evidence was such as to unduly prejudice the defendant in the context of the very strong evidence of guilt presented by the prosecution, and consequently we find no ground for reversal on this basis. *People v. Wheeler* (1979), 71 Ill. App. 3d 91, 388 N.E.2d 1284.

█ Defendant next contends that he was prejudiced when the prosecution adduced evidence of his commission of another crime— striking a member of the group holding him as he attempted to flee after Karen identified him in her mother's apartment. Clearly this evidence was admissible as evidence of flight, tending to show defendant's consciousness of guilt. *People v. Harris* (1972), 52 Ill. 2d 558, 288 N.E.2d 385.

## II

█ Defendant has asserted on appeal that the prosecutors made a number of improper and prejudicial statements in final argument to the jury. Only one of these comments was objected to at trial, and the objection to that comment was sustained. Ordinarily, such a failure to object constitutes a waiver of the alleged error. (*People v. Gunner* (1979), 73 Ill. App. 3d 533, 392 N.E.2d 165.) Moreover, upon review of the comments at issue, we cannot say that they could have prejudiced the defendant's right to a fair trial or affected the jury in its deliberations, and, accordingly, we find no basis for finding that any of these comments constituted plain error. *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

## III

█ Defendant is correct in his assertion that his 40-year extended sentence for attempted armed robbery was improper. Section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2) authorizes an extended-term sentence only for the class of the most serious offenses of which a defendant has been convicted. (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.) Because defendant was also convicted of two Class X felonies, he could not receive an extended-term sentence for this Class I felony. Accordingly we reduce that sentence to the maximum permissible, 15 years.

## IV

██ █ Defendant has also contended that his sentences must be vacated because the trial court failed to specify in the record that the factors necessary to permit extended-term sentences and consecutive sentences were present. In the absence of any request by the defend-

ant at the sentencing hearing for a statement of reasons for the sentences, we find that defendant has waived this issue. (*People v. Hicks* (1984), 101 Ill. 2d 366, 462 N.E.2d 473; *People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855.) We would also note that the trial court was specifically informed by the prosecutors of defendant's prior convictions for several Class X felonies, including 1982 convictions for rape, deviate sexual assault, and two armed robberies. In sentencing defendant, the court specifically referred to the indictment number of these charges. Thus, it cannot be contended that the trial court was not aware that a proper basis existed for the imposition of extended-terms, prior convictions, within 10 years, for the same or greater class felonies. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).) We also find that the record amply supports a finding that consecutive sentences were necessary to protect the public from further criminal conduct by the defendant. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b).) The trial court was informed that in the past four years prior to the convictions at issue the defendant had been convicted of four armed robberies, rape, deviate sexual assault, and unlawful restraint. During this trial the court was forced to have the defendant forcibly removed from the courtroom at one point because of his belligerent behavior. All these factors tend to support the consecutive terms imposed by the trial court.

## V

■ Defendant next contends that the extended and consecutive terms were based on the same conduct and thus constituted impermissible double enhancement of the punishment imposed on him. Without regard to defendant's assumption that such double enhancement would be improper (see *Missouri v. Hunter* (1983), 459 U.S. 359, 74 L. Ed. 2d 535, 103 S. Ct. 673), we find that, based on our prior discussion of defendant's sentences and the factors supporting them, it is clear that there existed sufficient independent bases for imposition of both consecutive and extended-term sentences.

## VI

■ Our review of the factors supporting the trial court's sentencing determination also establishes that, with the exception of defendant's extended-term sentence for attempted armed robbery, the trial court did not abuse its discretion in imposing these sentences. Absent a finding of such an abuse of discretion, we will not disturb the trial court's determinations. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Defendant's convictions are affirmed. Defendant's sentence for attempted armed robbery is reduced to 15 years. The remaining sentences are affirmed, with all sentences to be served consecutively to defendant's prior 40-year sentences as provided by the trial court.

Affirmed as modified.

JOHNSON and JIGANTI, JJ., concur.