THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANGELO ORR, Defendant-Appellant.

First District (4th Division)   No. 82—2069

Opinion filed November 6, 1986.

James J. Doherty, Public Defender, of Chicago (Karen S. Szpajer, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Beth Herndobler, and Maureen O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defend-

ant Angelo Orr was convicted of one count of aggravated arson (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)) and three counts of arson (Ill. Rev. Stat. 1981, ch. 38, par. 20—1(a)). The trial court sentenced defendant to concurrent terms of imprisonment of 25 years for the aggravated-arson conviction and 7 years for each of two of the arson convictions. On appeal, defendant raises the following questions for our review.

(1) Whether section 20—1.1(a)(1) of the aggravated-arson statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)) is unconstitutional in view of the Illinois Supreme Court's decision in *People v. Wick* (1985), 107 Ill. 2d 62, 481 N.E.2d 676, in which the court held section 20—1.1(a)(3) of the aggravated-arson statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(3)) violative of due process.

(2) Whether alleged errors that occurred at trial, either separately or cumulatively, amounted to reversible error. These alleged errors are: (a) the admission into evidence of an oral statement allegedly made by defendant five days prior to the arsons in which defendant threatened to burn the house which was the basis of defendant's convictions, where the State failed to disclose the statement during pretrial discovery, (b) the admission into evidence of the prior consistent statement of the State's only eyewitness to defendant's commission of the arsons in which the witness testified that, following the onset of the fires, the witness saw defendant in a crowd watching the fires and directed a companion of the witness to apprehend the defendant, (c) the admission into evidence of the testimony of two witnesses that they saw defendant being chased, by other persons, from among a crowd watching the fire, (d) the admission into evidence that five days before the fires, defendant threw a manhole cover through the windshield of the automobile of his former girlfriend, whose mother's house was the principal object of the arsons, (e) the admission into evidence of the circumstances of defendant's arrest, (f) allegedly erroneous and prejudicial statements made by the State during closing argument, and (g) the alleged ineffective assistance of defendant's trial counsel.

(3) Whether the trial court's imposition of sentence for two counts of arson violated the requirements of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, that multiple convictions cannot be predicated upon the same, single act.

Based upon *People v. Johnson* (1986), 114 Ill. 2d 60, in which the

Illinois Supreme Court held unconstitutional section 20—1.1(a)(1) of the aggravated-arson statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)), we vacate defendant's conviction for aggravated arson. (See also *People v. Wick* (1985), 107 Ill. 2d 62, 481 N.E.2d 676; *People v. Dukes* (1986), 146 Ill. App. 3d 790, *appeal denied* (1986), 113 Ill. 2d 563; *People v. Palmer* (1986), 141 Ill. App. 3d 234, 490 N.E.2d 154, *appeal denied with order* (1986), 113 Ill. 2d 566.) We also conclude that the cumulative impact of the State's failure to disclose and the erroneous admission of certain testimonial evidence deprived defendant of a fair trial. Because the question may arise again on remand, we consider the issue of whether defendant was properly convicted of multiple counts of arson, in light of *People v. King.* We determine that since the arson of one residence resulted in the spread of the fire to neighboring residences, defendant could be properly convicted of and sentenced on separate counts of arson for each residence damaged by fire. Accordingly, we vacate defendant's aggravated-arson conviction, reverse his arson convictions, and remand the cause for a new trial on the simple arson charges.

BACKGROUND

Defendant was accused of the July 9, 1981, arson of four residences located in the southwest vicinity of the city of Chicago. One of the buildings was owned by the mother of defendant's former girlfriend. The other buildings, neighboring that of the girlfriend's mother, also caught fire and were damaged as a result of the fire to the mother's residence. The buildings were occupied, and individuals were present therein, at the time the arsons occurred.

The State's theory of prosecution was that the defendant had perpetrated the arsons as revenge because of disputes between defendant and his former girlfriend. Defendant, who testified on his own behalf at trial, relied upon the defense of alibi. Evidence produced at trial established the following.

Gloria McLin (Gloria) and defendant dated each other from approximately July 1979 to either May 1981 or July 1981. Although Gloria had originally lived with her mother at 6031 South Winchester in Chicago, at some point prior to the arsons she moved to Bolingbrook. Defendant resided at 6018 South Winchester.

On July 4, 1981, Gloria was visiting her mother, Bertha McLin, at the mother's home at 6031 South Winchester. That evening, Gloria and defendant had an argument on the back porch of her mother's house which resulted in Gloria cutting defendant's left forearm and chest with a straight razor. Defendant received hospital treatment for

the wounds, including 30 stitches to his forearm. On July 6, defendant filed criminal charges against Gloria.

Gloria testified at trial that after she cut defendant with the razor on July 4, defendant told her that "he was going to get me and that he was going to destroy everything that I loved and he was gonna burn my mother's house." Gloria further testified that defendant then threw a manhole cover through the windshield of her automobile, which was parked on Winchester Street near the McLin house.

Gloria also testified that she visited her mother on Winchester Street on July 8 and that, when she returned to her home in Bolingbrook around 1 a.m. on July 9, she received a telephone call that her mother's house was on fire and she returned to the neighborhood.

Jerome Draper testified at trial that on July 8, somewhere between the time of 8:45 p.m. and 9 p.m., he was standing in front of his grandparents' home at 6033 South Winchester and was talking to a friend. Defendant approached them and told them that something was going to happen that evening and that they would hear about it. Defendant did not explain the meaning of his statement; instead, he simply repeated that something was going to happen and that they would hear about it. Draper had known defendant for a year prior to that evening, although he did not know the defendant personally. Draper testified that when he saw defendant, defendant had his arm in a sling.

Ronald Valentine, a resident of the neighborhood at 6036 South Winchester, stated at trial that he saw defendant around 8:45 p.m. on July 8 at 60th and Damen. Defendant told Valentine that "something was gonna happen, for [Valentine] not to get involved, that [defendant] was gonna get back with [Gloria McLin]." Valentine testified that defendant had a bandage on his left arm and was wearing a T-shirt. Later the next morning, Valentine was asleep at 6036 South Winchester. He heard his grandmother screaming because of the fire. Valentine got out of bed and looked out the window. He saw defendant standing across the street from 6031 South Winchester, where Bertha McLin lived. Defendant was watching the fire. Valentine testified that he saw Aaron Robinson and Lars Brown approach the defendant in the crowd and struggle with the defendant. Valentine did not see whether defendant stayed. Valentine stated that he was "good friends" with Gloria McLin, and had dated her several years ago. He also testified that he had known defendant for a year, but did not know him personally.

Lawrence Brown, who lived at 6035 South Winchester with his mother, testified at trial that he recognized defendant by sight be-

cause he had seen defendant around the neighborhood, although he did not know him personally. Brown stated that he saw defendant throw a manhole cover into the windshield of Gloria McLin's car on July 4.

Brown testified that in the early morning hours of July 9, he was in front of 6042 South Winchester, in the street, pitching pennies with some of his friends, including Aaron Robinson. He said that around 1:15 a.m. his mother called out to him from the front porch of the house to come see why their dogs were making so much noise. Brown went to the back of the Brown residence. He stated that he saw the defendant in the backyard of the McLin home at 6031 South Winchester and that defendant "was fiddling with a glass about the size of a jar." Brown saw defendant light the object and throw it at the McLin residence. The object hit the back porch of the house and made the sound of breaking glass. The back of the McLin home went up in flames.

Brown stated that defendant then went into the alley behind McLin's home and came down the alley south toward the Brown's residence. Defendant came half way up the back gangway at the Brown's home, then ran back into the alley, and continued to run south in the alley. Brown stated that although there were no lights in the McLin's backyard, the street lights were on and he saw defendant clearly. He testified that defendant was wearing tan or brown pants, a striped shirt, and had a bandage on his left arm.

Brown stated that he then went back to the group with whom he had been on Winchester Street, and told them "what [he] had seen [the] defendant doing." Brown then noticed defendant come out onto Winchester Street through a vacant lot five houses south of Brown's home. Brown stated that he went to the back of McLin's house during the fire, and that it smelled of gasoline fumes.

Brown further testified that he later saw defendant standing across from the McLin house among the crowd that was watching the fire. Brown turned to his companion, Aaron Robinson, and stated, in reference to the defendant, "there's that *** right there. There go that *** right there. And, I [Brown] asked him [Robinson] to catch him [defendant]." Brown stated that he (and apparently Robinson) were not able to catch the defendant, and that the defendant ran away.

On cross examination, Brown stated that after he saw the fire behind the McLin house, he told his companions on Winchester Street "that Angelo *** just set Ms. McLin's house on fire." Brown further testified that at the time he made this statement to his friends,

defendant had "come through the vacant lot turn across the street and start to wash his hands in the water that was left on the curb." It was also brought out on cross-examination that when Brown testified at a preliminary examination on July 28, 1982, he denied that he had seen any flames when defendant threw the object at the McLin house or that he had seen defendant light anything, and that he stated that defendant was wearing brown pants and a brown shirt when Brown saw defendant behind the McLin home, in the alley behind the McLin residence, and among the crowd in front of the McLin residence, in the early morning hours of July 9.

Denise Cohens, whose aunt was a resident of the neighborhood, testified that in the early morning hours of July 9, she was walking down the alley behind the McLin house. She noticed someone in the McLin backyard, and saw that this person was bending over or kneeling down. Cohens went out of the alley to Wolcott, the street east of Winchester, ran south on Wolcott, and then ran west on 61st Street. She bumped into defendant as he was running out of the alley into 61st Street. She testified that he said to her, "Got to go, I got to go, I just did something. I gotta go." Cohens also testified that she saw defendant run toward 61st and Winchester, and later saw him standing across the street from the fire, watching it. Cohens stated that defendant was wearing a yellow T-shirt, pants, and had a bandage on his left arm, and that she had never seen defendant before that morning.

Maurice Valentine, who lived at 6036 South Winchester with his mother and his brother, Ronald, testified that on July 4 he saw defendant throw a sewer cap through the windshield of Gloria McLin's car. He also stated that in the early morning hours of July 9, he was sitting on the curb of Winchester, toward 61st Street, with some friends. Defendant came up behind the group and washed his hands in the water from an open fire hydrant that was nearby at the curb of the street. Valentine smelled gasoline on the defendant. Defendant then asked for something on which to dry his hands and picked up some paper on the grass to dry his hands. Valentine testified that defendant's left forearm was bandaged. Valentine also stated that he was a "good friend" to the McLin family.

Valentine further testified that he then went to talk to Gloria McLin and her brother, who were standing on the corner of 61st Street and Winchester. As he (and others) were walking Gloria McLin home, they noticed smoke from a fire and went to see what was happening. He testified that thereafter he saw defendant standing in the crowd that was watching the fire across the street from the McLin

home, that other persons in the crowd began to "tussle" with defendant, and that these persons then "chased" defendant from where he was standing.

Claudette Brown, a resident of 6035 South Winchester with her son, Lawrence, testified that in the early morning hours of July 9 she heard her three dogs barking on the back porch of her house. Because she was unable to quiet the dogs, she called to her son, Lawrence, who was in the street on Winchester. Lawrence went down the gangway between 6035 and 6033 South Winchester to try to quiet the dogs on the back porch. Mrs. Brown testified that she followed Lawrence to the back of the house. She stated that when her son reached the back of the house, he said to her, "Oh, look." Mrs. Brown stated that she then saw the fire in the McLin backyard.

Evidence admitted at trial revealed that in the early morning hours of July 9, at approximately 1:10 a.m., a fire began at the back of Bertha McLin's house. The fire spread to one house north of the McLin residence (6029 South Winchester) and to two houses to the south (6033 and 6035 South Winchester). The State presented expert testimony to demonstrate that the fires were caused by an incendiary device commonly referred to as a "Molotov cocktail," whereby a glass container is filled with gasoline and ignited immediately prior to its contact with the area which takes fire. It also presented the testimony of the individuals who lived in the same residence as the defendant at 6018 South Winchester, to the effect that there was debris, including jars, under the exposed back porch of the house where defendant and these individuals lived, that there were three vehicles parked behind the house, that there was gasoline in the tank of one of these vehicles, and that on the morning after the fire one of the residents discovered a hose in the backyard of 6018 South Winchester. The State also produced testimony to demonstrate that tests showed that the hose contained residue characteristic of gasoline.

Defendant testified on his own behalf at trial. He denied that he had set fire to the residences, and further testified to his whereabouts on the evening of July 8 and the morning of July 9. Specifically, defendant stated that he had been with friends or business associates all evening on July 8, and that he returned to the neighborhood around 1 a.m. on July 9, and saw that the McLin residence was on fire.

Because the owner of 6029 South Winchester did not testify at trial, the trial court granted defendant's motion for a finding of not guilty as to this arson count. The jury found the defendant guilty of aggravated arson with respect to 6031 South Winchester and three

counts of arson with respect to 6031, 6033, and 6035 South Winchester. The trial court sentenced defendant to 25 years' incarceration for the aggravated-arson conviction and seven years' concurrent imprisonment with respect to two of the arson convictions (6033 and 6035 South Winchester). Defendant's timely appeal followed.

OPINION

I

■ Defendant claims that his conviction of aggravated arson based upon section 20—1.1(a)(1) of the aggravated-arson statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)) should be vacated because the section is unconstitutional in light of *People v. Wick* (1985), 107 Ill. 2d 62, 481 N.E.2d 676.

Section 20—1.1(a)(1) provides in relevant part that "[a] person commits aggravated arson when by means of fire or explosive he knowingly damages, partially or totally, any building or structure, including any adjacent building or structure, and (1) he knows or reasonably should know that one or more persons are present therein ***." (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1).) Simple arson, in comparison, is established when it is shown that "[a] person *** by means of fire or explosive, *** knowingly: (a) [d]amages any real property, or any personal property having a value of $150 or more, of another without his consent; or (b) [w]ith intent to defraud an insurer, damages any [real] property or any personal property having a value of $150 or more." Ill. Rev. Stat. 1981, ch. 38, par. 20—1.

In *People v. Johnson* (1986), 114 Ill. 2d 60, the Illinois Supreme Court held unconstitutional subsection (a)(1) of the aggravated-arson statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)) on due process grounds. (See also *People v. Wick* (1985), 107 Ill. 2d 62, 481 N.E.2d 676 (holding unconstitutional Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(3)); *People v. Dukes* (1986), 146 Ill. App. 3d 790 (construing constitutionality of Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)), *appeal denied* (1986), 113 Ill. 2d 563; *People v. Palmer* (1986), 141 Ill. App. 3d 234, 238-39, 490 N.E.2d 154 (construing constitutionality of Ill. Rev. Stat. 1983, ch. 38, par. 20—1.1(a)(1), which was identical to Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)), *appeal denied with order* (1986), 113 Ill. 2d 566.) Based upon this precedent, we conclude that defendant's conviction for aggravated arson must be reversed.

■ The State contends that defendant has waived his constitutional challenge to subsection (a)(1) of the aggravated-arson statute by failing to present this issue to the trial court, and in not raising the

question until a supplemental brief filed after oral argument in this appeal. However, the Illinois Supreme Court has held that a conviction based upon an unconstitutional statute "is void and can be attacked at any time." (*People v. Wagner* (1982), 89 Ill. 2d 308, 311, 433 N.E.2d 267; see also *People v. McCarty* (1983), 94 Ill. 2d 28, 37, 455 N.E.2d 298.) Accordingly, we vacate defendant's conviction and sentence for aggravated arson based upon section 20—1.1(a)(1) of the 1981 aggravated-arson statute. Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1).

## II

Defendant argues that several errors deprived him of a fair trial. Our review of the record leads us to conclude that the prejudicial impact of three errors that occurred at trial entitles defendant to a new trial with respect to the simple arson charges.

■ The first prejudicial error that occurred at trial pertains to the State's failure to provide defense counsel with an oral statement allegedly made by defendant to Gloria McLin a few days prior to the Winchester Street fires. According to Gloria, following the argument between defendant and Gloria during which she cut defendant with a razor, defendant stated that "he was going to get [her] and that he was gonna destroy everything that [she] loved and he was gonna burn [her] mother's house." After Gloria testified that defendant had made this statement, defense counsel objected and requested a sidebar.

In chambers, defense counsel claimed that defendant's statement had not been disclosed in discovery and requested a mistrial. The assistant State's Attorney responded that all police reports had been tendered, that the State was under no obligation to reduce all statements to writing, and that Gloria, who had been named as a witness, could have been interviewed by the defense prior to trial. The trial court denied defendant's motion for a mistrial. It also later denied defendant's post-trial motion for a new trial because of the State's failure to disclose defendant's oral threat to Gloria on July 4.

Illinois Supreme Court Rule 412 sets forth the scope of the State's obligation to disclose material and information to an accused. (87 Ill. 2d R. 412.) With respect to statements of an accused, the rule provides that the State shall disclose "any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgement of such statements." (87 Ill. 2d R. 412(a)(ii).) "The rule encompasses not only formal statements made to the authorities but also statements made to anyone that might have bearing on the

defendant's guilt or innocence. [Citation.]" (*People v. Weaver* (1982), 92 Ill. 2d 545, 558, 442 N.E.2d 255, 260.) Since the defendant's statement to Gloria McLin that he was "gonna burn [her] mother's house" was a direct threat to commit the offenses with which defendant was charged and therefore had a bearing on defendant's guilt, the statement should have been disclosed by the State upon defendant's motion during pretrial discovery.

The State claims that it complied with its discovery obligation because the defendant's specific statement to Gloria was disclosed in the police reports that were originally tendered to the defense. However, the record indicates that defendant's statement to Gloria McLin was not contained in the police reports tendered to the defense. It was not until the hearing on defendant's post-trial motions that the State acknowledged that the specific threat testified to by McLin was not contained in these reports. According to the assistant State's Attorney, the closest reference to defendant's threat was contained in Detective Vegas' report of July 10, 1981, which stated that Gloria McLin "felt that it [the fire] occurred because of revenge because of her and [defendant], who use [*sic*] to be her boyfriend, and, apparently, was trying to get even with her." We do not believe that this reference to "revenge" as a motive can be equated with the alleged specific threat by the defendant to commit the crimes for which he was charged, tried, and convicted.

The State also maintains that it complied with Rule 412 because the State is under no obligation to reduce a defendant's oral statement to writing. Although it has been held that the rule does not require that the State provide a defendant with a transcript or verbatim report of his alleged oral statement, the rule does affirmatively require disclosure by the State of "the substance of any oral statements made by the accused." (87 Ill. 2d R. 412(a)(ii).) The State's argument is therefore without merit. See *People v. Boucher* (1978), 62 Ill. App. 3d 436, 379 N.E.2d 339, *appeal denied* (1978), 71 Ill. 2d 618; see also *People v. Marek* (1980), 92 Ill. App. 3d 746, 415 N.E.2d 1230.

The State's contention that it satisfied its discovery burden because it specified Gloria McLin as a potential witness in its answer to the defendant's request for discovery is equally unavailing. Rule 412 places upon the State the duty to disclose both the substance of the defendant's oral statement and a list of witnesses thereto; it does not place upon the defendant the burden of divining which of the State's potential witnesses may testify at trial to oral statements allegedly made by the defendant, the substance of which the defendant is unaware because of the State's failure to disclose. (See *People v.*

*Boucher* (1978), 62 Ill. App. 3d 436, 440, 379 N.E.2d 339.) We note that in the case at bar, the State's answer to discovery listed almost 40 persons as potential witnesses at trial.

Because the nondisclosed statement at issue here constituted a direct threat to commit the crimes for which defendant was tried and convicted, and because the oral statement was alleged to have been made approximately five days prior to the incident, we are unable to conclude that the State's nondisclosure did not prejudice the defendant at trial. (See *People v. Morgan* (1986), 112 Ill. 2d 111, 134-36, 492 N.E.2d 1303.) Furthermore, Gloria McLin testified at trial that the defendant's oral statement to her was witnessed by her mother and a neighbor. Advance notice of the substance of and witnesses to defendant's statement would have allowed defense counsel to interview these individuals, and a thorough investigation may have provided defense counsel with a means of discrediting either the occurrence of or the interpretation to be given to defendant's statement. (See *People v. Weaver* (1982), 92 Ill. 2d 545, 561, 442 N.E.2d 255; *People v. Eliason* (1983), 117 Ill. App. 3d 683, 695, 453 N.E.2d 908, *appeal denied* (1983), 96 Ill. 2d 562.) We note that the defense was offered no opportunity for a continuance at trial, nor did the trial court consider the possibility of excluding the undisclosed testimony. (See 87 Ill. 2d R. 415; *People v. Morgan* (1986), 112 Ill. 2d 111, 135, 492 N.E.2d 1303; *People v. Weaver* (1982), 92 Ill. 2d 545, 561, 442 N.E.2d 255.) Under these circumstances, we conclude that defendant was prejudiced by the State's noncompliance with discovery rules.

The remaining prejudicial errors at trial pertain to the admission into evidence of the prior consistent statement of the State's eyewitness, Lawrence Brown, and the testimony of two State's witnesses regarding other individuals' pursuit of defendant from the scene after the fires began.

Lawrence Brown testified that on the morning of July 9, 1981, he observed defendant throw a container at the back of Bertha McLin's house, and that a fire then broke out on the back porch of the residence. Brown further testified that a few minutes later, he saw defendant standing on Winchester Street. At this point, Brown turned to his companion, Aaron Robinson, and, in reference to the defendant, stated "that's that *** right there. There go that *** right there. And, I asked [Robinson] to catch him."

In addition, two of the State's witnesses, Ronald and Maurice Valentine, stated that they originally saw defendant standing across the street from the McLin residence, and that he was one of many individuals who were watching the fires. The Valentine brothers stated

that they thereafter saw some of these other individuals "struggle" with the defendant; Maurice further testified that defendant was "chased" by these other persons. Ronald stated that these other individuals were Aaron Robinson and Lars Brown.

Initially we observe that Brown's testimony regarding his statement to Robinson was erroneously admitted into evidence. It is recognized that a witness may not testify to the content of his prior out-of-court statements which are consistent with his in-court testimony in an attempt to corroborate his trial testimony, with certain exceptions not relied upon by the State in the instant case. (See *People v. Emerson* (1983), 97 Ill. 2d 487, 500-01, 455 N.E.2d 41; *People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363.) In the case at bar, it was proper for Brown to relate his observations of defendant's conduct in throwing the container at the McLin house. However, in our opinion, Brown's statement to Robinson constituted a "hue and cry" that defendant was the perpetrator of the arsons and should be restrained. This additional testimony impermissibly bolstered the veracity of Brown's observations and in particular his identification of defendant as the person who had started the fire at the McLin residence. See, *e.g., People v. Davis* (1984), 130 Ill. App. 3d 41, 54-57, 473 N.E.2d 387.

Moreover we determine that admission of Brown's testimony regarding his prior consistent identification of the defendant was undoubtedly prejudicial to the defendant. Brown was the only individual who testified that he had seen and watched the defendant start the fire at the back porch of the McLin residence. Various significant portions of his testimony were internally inconsistent, however, with regard to what he had seen the defendant do when the fire broke out. Also, his physical description of the defendant was contradicted by the testimony Brown gave at an earlier preliminary hearing, as well as by the descriptions of the defendant on the early morning in question given by some of the State's other witnesses who testified to having seen the defendant at that time. Brown's testimony was also inconsistent with the testimony of his mother, who stated that Brown simply went to the back of the Brown residence and saw the fire at the back of the McLin home. Because the credibility and weight to be given by the jury to Brown's eyewitness testimony were crucial to a determination of the defendant's guilt, we conclude that admission of Brown's prior consistent statement here was prejudicial to the defendant's defense at trial.

The prejudicial impact of Brown's testimony was compounded by the erroneous admission into evidence of certain persons' pursuit

of defendant at the scene. The testimony of the Valentine brothers related the assertive conduct of others which demonstrated that the persons who "chased" the defendant believed that he committed the arsons. This assertive conduct was tantamount to a verbal declaration that defendant had committed the crime, and should not have been admitted into evidence. In *People v. Higgs* (1973), 11 Ill. App. 3d 1032, 298 N.E.2d 283, the court found reversible error where the State's witness testified at trial that when defendant was arrested, four persons in a crowd had cried out that defendant had committed the crime for which he was being tried, and that these individuals then attacked the defendant. In our view *Higgs* is analogous to the case at bar. The record here shows that the assertive conduct of certain persons conveyed their belief that defendant had committed the arsons, which assuredly had a prejudicial effect on the jury's determination of defendant's guilt. See also *People v. Meredith* (1980), 84 Ill. App. 3d 1065, 405 N.E.2d 1306, *appeal denied* (1980), 81 Ill. 2d 597; *People v. Jones* (1975), 28 Ill. App. 3d 896, 329 N.E.2d 855; *cf. People v. Carter* (1984), 129 Ill. App. 3d 1076, 473 N.E.2d 434, *appeal denied* (1985), 106 Ill. 2d 556.

In our opinion the cumulative prejudicial impact of the trial errors noted above was sufficient to entitle defendant to a new trial. The undisclosed threat to burn Bertha McLin's house was simply too damaging, and the erroneously admitted evidence of the neighbors' beliefs that defendant had committed the arsons was too likely to have substantially influenced the jury's determination of defendant's guilt for this court to affirm the defendant's arson convictions. (See *People v. Friesland* (1985), 109 Ill. 2d 369, 375-76, 488 N.E.2d 261; *People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387; 87 Ill. 2d R. 615(a).) Defendant is entitled to a fair trial in which the jury reviews properly admitted evidence in order to make an impartial, objective, and independent determination of defendant's guilt or innocence, free from the taint of the neighbors' opinions of defendant's guilt for the commission of the arsons. We hold that defendant is entitled to a new trial with regard to the simple arson charges for which he was found guilty.

We note that defendant asserts that other evidence was also erroneously admitted at trial. In view of reversal and remand, we address these issues briefly. Because the other errors alleged by defendant are not likely to recur on remand, however, we do not consider his claims that the State's closing arguments were improper, or that defendant was denied effective assistance of trial counsel.

■ Defendant argues that he was deprived of a fair trial when

Gloria McLin and two of the Winchester Street neighbors testified to the effect that defendant threw a sewer cover through the windshield of Gloria's car on July 4. He claims that this testimony was impermissible "other crimes" evidence.

Generally, "[e]vidence of other crimes is admissible if it is relevant to establish any fact material to the prosecution" (*People v. Stewart* (1984), 105 Ill. 2d 22, 62, 473 N.E.2d 840, 860, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 283, 105 S. Ct. 2666) such as knowledge, intent, motive, design, plan or identification (*People v. Stewart* (1984), 105 Ill. 2d 22, 61-62, 473 N.E.2d 840; *People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238). Such evidence will be deemed nonetheless inadmissible, however, where its probative value is outweighed by the prejudicial effect upon the jury by persuading it to convict simply because it perceives the defendant as a bad person who has a violent nature or propensity. *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145; *People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238.

The State contends that the entire incident on July 4, both the argument and the destruction of the windshield, established a motive for defendant to burn Bertha McLin's house. We note, and defendant does not dispute, that both the injury he sustained during the altercation with Gloria McLin and his statements during that incident were admissible evidence showing defendant's motive to seek revenge by means of damaging the property of the McLins. (See, *e.g., People v. Stewart* (1984), 105 Ill. 2d 22, 55-56, 473 N.E.2d 840.) Defendant argues, however, that defendant's own conduct of breaking the windshield was not a "motive" for him to commit arson five days later and that the evidence was not relevant for that purpose. Defendant claims that the overriding objective and effect of the challenged testimony was to convince the jury to convict the defendant because he had a propensity to commit acts of violence destructive to other person's property.

■■ We are not persuaded by defendant's argument. "Since motive evidence, by definition, provides a possible reason for the commission of an offense, it necessarily tends to identify a particular accused as the perpetrator of the offense. Prior-acts evidence may be admitted to establish a motive theory if it is relevant to the theory. It is relevant if it tends to establish the theory relied upon. [Citation.] *** Since the relevance of the particular item of evidence depends upon whether it advances the entire motive theory [citation], arguing that defendant's acts in and of themselves do not provide a reason for

the offense does not address the question of whether the evidentiary item is relevant to the proffered motive and therefore admissible." *People v. Hendricks* (1986), 145 Ill. App. 3d 71, 105, 495 N.E.2d 85, 108-09, *appeal allowed* (1986), 112 Ill. 2d 585; see also *People v. McNutt* (1986), 146 Ill. App. 3d 357, 364, *appeal denied* (1986), 113 Ill. 2d 565.

██ In the case at bar, the State advanced the theory that defendant's motive for the arson was his desire to seek revenge, by the infliction of damage upon the property of Gloria and members of her family, because of defendant's disputes with her. The evidence of defendant's destruction of a portion of Gloria's automobile advanced the State's theory of motive by establishing that defendant, after being cut by Gloria, immediately responded to their disagreement by damaging her car. As a result the evidence was relevant to defendant's motive and properly admitted on this basis.

██ Defendant claims that the trial court committed plain error by allowing two other State's witnesses to also testify to their having seen defendant throw a sewer cover through the windshield of McLin's automobile on July 4. Defendant contends that this additional testimony was cumulative, and that any probative value of the testimony was therefore outweighed by its prejudicial impact of portraying defendant as a person of violent disposition.

We note, however, that the State's witnesses each testified to the defendant's commission of one act—that of destruction of a portion of Gloria's car—rather than to several acts of property destruction on the part of the defendant. Our review of the record also indicates that the jury was instructed as to the limited purpose of motive evidence, and that the State's closing argument to the jury did not dwell upon this evidence or attempt to argue to the jury that the State's witnesses' testimony was affirmative substantive evidence of defendant's commission of the arsons. Under these circumstances, we conclude that there was no prejudicial error in permitting McLin and two Winchester Street neighbors to testify to defendant's throwing a manhole cover through the windshield of Gloria's automobile on July 4. See *People v. Calhoun* (1984), 126 Ill. App. 3d 727, 736, 467 N.E.2d 1037; *cf. People v. Funches* (1978), 59 Ill. App. 3d 71, 73-74, 375 N.E.2d 135.

██ Defendant also argues that it was reversible error for the State to introduce the testimony of one of the arresting officers regarding the circumstances surrounding defendant's arrest. Specifically, one of the arresting officers of the Chicago police department testified that a backup unit was called when defendant was about to

be arrested, and that two officers went to the front door of the building where defendant was located and two officers went to the back door of the building. The defendant argues that this testimony was used by the State to create the impression that the police had to "surround" the house in which defendant was situated because the defendant was "a dangerous felon from whom the police expected· resistance."

We find no reversible error in the admission of the police officer's testimony regarding the circumstances of the defendant's arrest, as such evidence was an integral part of the narrative of the police investigation of the crime which led to the defendant's arrest. It is significant that the State made no reference to this evidence in closing argument, explicitly or implicitly, to show that defendant was considered by the police to be dangerous or likely to attempt to evade apprehension. (See *People v. Evans* (1962), 25 Ill. 2d 194, 202, 184 N.E.2d 836, *cert. denied* (1963), 372 U.S. 922, 9 L. Ed. 2d 727, 83 S. Ct. 738; *People v. Buckner* (1984), 121 Ill. App. 3d 391, 397, 459 N.E.2d 1102, *appeal denied* (1984), 101 Ill. 2d 548; *People v. Martin* (1984), 121 Ill. App. 3d 196, 211-12, 459 N.E.2d 279, *appeal denied* (1981), 101 Ill. 2d 549; see also *People v. Matthews* (1985), 137 Ill. App. 3d 870, 875, 485 N.E.2d 403; *People v. Davis* (1981), 93 Ill. App. 3d 187, 416 N.E.2d 1179.) As a result, we conclude that there was no prejudicial error in the introduction into evidence of the police officer's testimony of the circumstances surrounding the defendant's arrest.

## III

Because the question may arise again on remand, we consider defendant's contention that the single act of throwing an incendiary device may not form the basis for multiple convictions of arson.

In *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, the Illinois Supreme Court held that a defendant could not be sentenced for multiple offenses which are "carved from the same physical act." (66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.) Recent appellate court decisions have held, however, that the rule of *People v. King* is inapplicable where one physical act causes damage or injury to several persons or properties. *People v. Williams* (1985), 131 Ill. App. 3d 597, 610, 475 N.E.2d 1082, *appeal denied* (1985), 106 Ill. 2d 559; *People v. Mercado* (1983), 119 Ill. App. 3d 461, 463, 456 N.E.2d 331; see also *People v. Russell* (1986), 143 Ill. App. 3d 296, 303, 492 N.E.2d 960.

Because the single act of setting fire to one residence caused the

fire to spread to neighboring residences, we hold that the rule of *People v. King* did not preclude the defendant's convictions and sentences on separate counts of simple arson with regard to each residence so damaged. See *People v. Williams* (1985), 131 Ill. App. 3d 597, 610, 475 N.E.2d 1082.

For the reasons set forth above, the defendant's conviction and sentence for aggravated arson are reversed; the defendant's convictions and sentences for simple arson are reversed; and the cause remanded for a new trial with respect to the simple arson charges against defendant for which he was found guilty at his first trial.

Reversed and remanded.

LINN, P.J., and JIGANTI, J., concur.